UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMES DUNN, LACQUAN BERKLEY, LUIS
GARCIA, DEJOUR NESMITH, GILBERT
CARRION, TYRELL ESCOBAR, SAMUEL
DENIS, JOSE CORNEJO, and DEVIN HOYT;
individually and on behalf of all similarly
situated individuals,

Civil Case No. 9:25-cv-1242  MAD/DJS

                        Plaintiffs,

**CLASS ACTION COMPLAINT FOR
INJUNCTIVE
AND DECLARATORY RELIEF**

-against-

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, COMMISSIONER DANIEL
F. MARTUSCELLO III, in his official capacity,
SUPERINTENDENT BENNIE THORPE, in
his official capacity, NEW YORK STATE
OFFICE OF MENTAL HEALTH,
COMMISSIONER ANN MARIE T.
SULLIVAN, in her official capacity, RMHU
UNIT CHIEF VINCENT LORUSSO, in his
official capacity, Governor KATHY HOCHUL,
in her official capacity, and THE STATE OF
NEW YORK,

U.S. DISTRICT COURT – N.D. OF N.Y.

# FILED

## Sep 08 - 2025

John M. Domurad, Clerk

                        Defendants.

## PRELIMINARY STATEMENT

1.      Plaintiffs bring this action individually and on the behalf of all others similarly

situated, to challenge the acts and omissions of the New York State Department of Corrections

and Community Supervision ("DOCCS"), DOCCS Commissioner Daniel F. Martuscello

III,  Marcy Correctional Facility Superintendent Bennie Thorpe, Marcy Residential Mental

Health Unit Chief Vincent LoRusso, the New York State Office of Mental Health ("OMH"),

OMH Commissioner Ann T. Sullivan, New York State ("NYS"), and NYS Governor Kathy Hochul (collectively "Defendants").

2.    Defendants are knowingly depriving individuals in the Residential Mental Health Unit ("RMHU") at Marcy Correctional Facility ("Marcy") of all out-of-cell programming and mental health and medical treatment and keeping them almost entirely isolated in violation of the U.S. Const. amend. VIII; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, 12132; and 29 U.S.C. § 794.

3.    Years in the making, the RMHU was designed in response to a 2002 lawsuit filed by Disability Advocates, Inc. ("DAI")[1], Prisoners' Legal Services of New York ("PLS"), and others[2], *Disability Advocates, Inc. v. New York State Office of Mental Health*, that alleged that the Department of Correctional Services[3] and the Office of Mental Health ("OMH") provided inadequate mental health services within the prison system. The underlying complaint detailed prisoners being isolated in their small, cramped cells for 24 hours a day for months on end, absent the occasional "call-out." There was no opportunity to attend programs or other rehabilitative activities, no congregate recreation, and little to no mental health treatment aside from medication. The underlying lawsuit alleged these conditions caused significant life-threatening psychiatric deterioration.

4.    The 2007 settlement agreement aimed to bar the long-established practice of placing incarcerated individuals with serious mental illness into segregated confinement settings that have been proven to be countertherapeutic. The creation of RMHUs was specifically

---

[1] DAI is Disability Rights New York's incorporated name.
[2] Plaintiffs' counsel included Davis Polk Wardwell and the Legal Aid Society's Prisoners' Rights Project
[3] In 2011, the Department of Correctional Services and Division of Parole merged to form one single agency, Department of Corrections and Community Supervision ("DOCCS").

articulated in the 2007 settlement agreement and was codified into law in 2008. 2008 N.Y. Sess. Laws Ch. 1.

5.     The RMHU requires, among other things, "four hours of structured out-of-cell therapeutic programming and/or mental health treatment along with three hours out-of-cell congregate programming, services, treatment, recreation, activities, and/or meals, with an additional one hour of recreation, for a total of seven hours of out-of-cell on a daily basis." N.Y. Comp. Codes R. & Regs. Tit. 7, § 320.2 (2023).

6.     Now, sixteen years after its opening, Defendants are operating the Marcy RMHU in precisely the same manner as the segregated confinement housing units it was created to redress. All therapeutic programming has ceased, incarcerated individuals are being isolated in their cells for twenty-four hours a day, save for an occasional "call-out," and incarcerated individuals are not receiving individual therapy.

7.     Defendants are aware that RMHU residents should be getting out-of-cell therapeutic programming, and interactions with mental health professionals, counselors, offender rehabilitation coordinators ("ORC"), group therapy, and other out-of-cell therapeutic activities.

8.     Defendants are aware that such programming is designed to provide treatment, support and coping mechanisms for incarcerated individuals with serious mental illnesses.

9.     Defendants are aware of the overwhelming likelihood that incarcerated individuals housed in the Marcy RMHU will suffer and experience mental deterioration without sufficient out-of-cell therapeutic programming because of their serious mental illnesses and the need for a higher level of therapeutic care.

10.     Despite this knowledge, and their legally binding obligation, Defendants have blatantly ignored the intended purpose of the RMHU, which was to provide a more therapeutic

3

setting for incarcerated individuals with serious mental illnesses, and, instead, are confining the incarcerated individuals in the Marcy RMHU to their cells for up to twenty-four hours a day.

11.     The Defendants have inflicted cruel and unusual punishment by depriving Plaintiffs of all therapeutic programming, keeping Plaintiffs almost entirely isolated, and denying Plaintiffs the opportunity to seek out-of-cell mental health treatment, as well as out-of-cell medical treatment.

12.     As a result of Defendants' actions, incarcerated individuals in the Marcy RMHU are denied the opportunity to participate in and benefit from DOCCS services and programs for which they are otherwise eligible solely on the basis of their disability. With this lawsuit, Plaintiffs and all class members seek declaratory and injunctive relief to redress the violation of their rights pursuant to Title II of the ADA, Section 504 of the Rehabilitation Act, and the Eighth Amendment of the United States Constitution.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. Sections 1331 and 1343(a)(3), as this action arises under, and seeks redress for, the deprivation of rights secured by the ADA, Section 504, and the Eighth Amendment. 42 U.S.C.A. § 12132 (West 2025); 29 U.S.C. § 794; U.S. Const. amend. VIII.  Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) because Defendants are doing business and/or are residents of this Judicial District, and the named Plaintiffs reside in this district.

## THE PARTIES

14.     All named plaintiffs have been designated as having a serious mental illness as defined in N.Y. Correction Law § 137(6)(e).

15.     All named plaintiffs are considered to be a member of "Special Populations" as defined by N.Y. Correct. Law § 2(c)(33).

16.     James Dunn is an individual with serious mental illness who is currently in DOCCS custody and housed in the Marcy RMHU.

17.     Lacquan Berkley is an individual with serious mental illness who is currently in DOCCS custody and housed in the Marcy RMHU.

18.     Luis Garcia is an individual with serious mental illness who is currently in DOCCS custody and housed in the Marcy RMHU.

19.     Dejour Nesmith is an individual with serious mental illness who is currently in DOCCS custody and housed in the Marcy RMHU.

20.     Gilbert Carrion is an individual with serious mental illness who is currently in DOCCS custody and housed in the Marcy RMHU.

21.     Tyrell Escobar is an individual with serious mental illness who is currently in DOCCS custody and housed in the Marcy RMHU.

22.     Samuel Denis is an individual with serious mental illness who is currently in DOCCS custody and housed in the Marcy RMHU.

23.     Jose Cornejo is an individual with serious mental illness who is currently in DOCCS custody and housed in the Marcy RMHU.

24.     Devin Hoyt is an individual with serious mental illness who is currently in DOCCS custody and housed in the Marcy RMHU.

25.     Defendant DOCCS is an agency of New York State.

26.     Defendant DOCCS maintains an office at Harriman State Office Campus, 1220 Washington Avenue, Albany, New York 12226.

27.     Defendant Martuscello is the Commissioner of DOCCS, with all powers and duties set forth in N.Y. Correct. Law § 11 and otherwise prescribed by law, statutes, rules and regulations.

28.     Defendant Martuscello is employed at the Harriman State Office Campus, 1220 Washington Avenue, Albany, New York 12226.

29.     Defendant Thorpe is the Superintendent of Marcy Correctional Facility.

30.     Defendant Thorpe is employed at 9000 Old River Road, Marcy, New York 13403.

31.     Defendant LoRusso is the Marcy RMHU Unit Chief .

32.     Defendant LoRusso is employed at 9000 Old River Road, Marcy, New York 13403.

33.     Defendant OMH is an agency of New York State.

34.     Defendant OMH maintains an office at 44 Holland Avenue, Albany, New York 12229.

35.     Defendant Sullivan is the Commissioner of OMH, with all powers and duties set forth in and otherwise prescribed by law, statutes, rules and regulations.

36.     Defendant New York State is a public entity as defined by 42 U.S.C. § 12131(1)(A).

37.     New York State operates DOCCS.

38.     Defendant Kathy Hochul is the Governor of New York State.

39.     Defendant Hochul is employed at the NYS Capitol Building, Albany, New York 12224.

## LEGAL AND STATUTORY FRAMEWORK

40.     The Eighth Amendment of the Constitution of the United States sets forth that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments be inflicted."

41.     Title II of the ADA, 42 U.S.C. §§ 12131, 12132, prohibits discrimination against individuals with disabilities.

42.     Specifically, the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

43.     The implementing regulations of the ADA require that a public entity must make an individualized assessment in determining if it is unsafe for an individual to participate in programming. 28 C.F.R. § 35.139.

44.     Section 504 of the Rehabilitation Act provides that no person with a disability, "shall, solely by reason of his or her disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

## FACTUAL ALLEGATIONS

### Creation of the SHU Exclusion Law, the RMHUs, and HALT

43.     The SHU Exclusion Law was enacted on January 28, 2008, with the goal to change the conditions of confinement and treatment of incarcerated individuals with serious mental illness.[4]

---

[4] CONVICTED PERSONS WITH SERIOUS MENTAL ILLNESS—CONFINEMENT CONDITIONS—TREATMENT, 2008 Sess. Law News of N.Y. Ch. 1 (S. 6422) (McKINNEY'S).

44.    In passing this law, the NYS legislature found that incarcerated individuals "with serious mental illness should be offered therapeutic care and treatment in residential mental health settings when doing so will not compromise the safety of inmates or other persons or the security of the facility." *Id.*

45.    This law defined a category of incarcerated individuals designated as having a serious mental illness. *Id.*

46.    The SHU Exclusion Law, acknowledging the risk of placing such individuals in confinement, required them to be diverted from disciplinary confinement settings to a "residential mental health treatment units." *Id.*

47.    The law defined resident mental health treatment units ("RMHTUs") as "housing for inmates with serious mental illness that is operated jointly by the department and the office of mental health and is therapeutic in nature," noting that "such units shall not be operated as disciplinary housing units, and decisions about treatment and conditions of confinement shall be made based upon a clinical assessment of the therapeutic needs of the inmate and maintenance of adequate safety and security on the unit." *Id.*

48.    The law noted that RMHTUs included but would not be limited to residential mental health units (RMHUs), behavioral health units, intermediate care programs, and intensive intermediate care programs. *Id.*

49.    The RMHU program was "designed to meet the mental health and behavioral needs of the inmate-patient while taking into consideration their disciplinary status and safety and security needs of the correctional system" and is intended to provide "evaluation,

intervention and supportive mental health and correctional rehabilitative services for the inmate-patient participants." *Id.*[5]

50.     At its inception, this included at least four hours of specialized out-of-cell therapeutic programming five days a week. *Id.*

51.     This programming had three stages and was tailored to meet each incarcerated individual's clinical needs.

52.     On March 31, 2021, the Human Alternatives to Long-Term Solitary Confinement Act (known as the "HALT Solitary Confinement Act" or "HALT Act") was signed into law.

53.     The HALT Act stated, "Studies have consistently found that subjecting people to segregated confinement for twenty-two to twenty-four hours a day without meaningful human contact, programming, or therapy can cause deep and permanent psychological, physical, developmental, and social harm. People often have more difficulty complying with prison rules after being placed in segregated confinement. Segregated confinement can be particularly devastating for certain vulnerable people, such as young or elderly people, pregnant women, and people with disabilities or trauma histories." 2021 New York Assembly Bill No. 2277, New York Two Hundred Forty-Fourth Legislative Session.

54.     The HALT Act limited the amount of time any incarcerated individual can be in "segregated confinement," defined as cell confinement of more than seventeen hours per day. Correction Law § 137; Correction Law § 2(23).

55.     The HALT Act also prohibited the placement of incarcerated individuals who are members of a "special population" in segregated confinement for any amount of time. Correction Law § 137(6)(h).

---

[5]https://doccs.ny.gov/system/files/documents/2019/09/SMI_Offenders_Under_Custody_2011.pdf

56.    Special populations include, among other groups, individuals diagnosed with disability as defined in New York's Human Rights Law. Correction Law § 2(33).

57.    The HALT Act prohibits any individual not excluded from segregated confinement from being in segregated confinement for longer than fifteen consecutive days. Correction Law § 137(6)(i)(i).

58.    After fifteen days, incarcerated individuals in segregated confinement must be transferred to a residential rehabilitation unit where they must "be offered at least six hours of daily out-of-cell congregate programming, services, treatment, recreation, activities and/or meals, with an additional minimum of one hour for recreation." Correction Law § 137(6) (j)(ii).

59.    The minimum programming and recreation requirements set forth in the HALT Act also apply to the RMHU. Correction Law § 401(1).

60.    The programming and recreation requirements are delineated in the RMHU operations manual. Some of the requirements are:

  A.  Exercise will be conducted in a congregate setting for a minimum of one hour unless placed on exceptional circumstance.

  B.  The opportunity to participate in the following programming: Aggression Replacement Training (ART), Academic Education, Transitional Services Program, Integrated Dual Disorder Treatment, Sex Offender Correctional Treatment Program (SOCTP), and Structured Recreation.

61.    On February 17, 2025, correction officers employed by DOCCS began an illegal strike.

62.    The strike spread to most DOCCS facilities across the state, including Marcy.

63.     In the aftermath of the illegal strike, DOCCS paused most regular prison programs and services, including all Marcy RMHU programming.

64.     The pause in programming resulted in the incarcerated individuals in the Marcy RMHU being confined to their cells for nearly twenty-four hours a day.

### Investigation into the Marcy RMHU

65.     On August 6, 2025, Disability Rights New York ("DRNY"), as the Protection and Advocacy Agency ("P&A") for people with disabilities in New York State, conducted an investigative visit of Marcy RMHU in response to reports of suicide attempts, near constant isolation, and deprivation of out-of-cell programming.

66.     During this visit, DRNY provided incarcerated individuals with an opportunity to speak with them.

67.     After the visit, DRNY sent Defendant Thorpe a findings of abuse and neglect letter.

68.     The findings letter contained four preliminary findings of abuse and neglect, and recommendations for corrective action based on those findings.

69.     DRNY requested that Defendant Thorpe respond to the findings letter with a plan for corrective action by August 29, 2025.

70.     On September 5, 2025, DRNY received a letter from Acting Superintendent Danielle Medbury which contained no proposed corrective actions and did not indicate any intention to remedy the conditions of the underlying claims.

71.     On September 8, 2025, DRNY finalized its findings and closed the investigation, with notice to Defendants and an accompanying demand for corrective action.

11

## Current Conditions of the Marcy RMHU

72.     The Marcy RMHU can hold a maximum of 100 incarcerated individuals.

73.     Marcy RMHU is consistently close to capacity, housing at least ninety-five individuals at any given time.

74.     RMHU cells are single occupancy.

75.     Each cell is connected to a "recreation pen," which is a single occupancy cage and does not provide for congregate recreation or any adequate exercise.

76.     The recreation pens are extremely hot during the summer months.

77.     The recreation pens are often filthy from both debris and human feces that are frequently thrown by incarcerated individuals from their recreation pens.

78.     There is no exercise or recreation equipment in the pen; it is just an empty cage with a solid ceiling.

79.     Incarcerated individuals in the Marcy RMHU are subjected to extreme temperatures in the summer months due to the lack of proper airflow through the unit, and the lack of any air conditioning or other means of controlling the temperature.

80.      Each cell has a heavy steel door with a small, grate-covered window that connects to the main hallways of the RMHU.

81.     Meals are provided to individuals through the same opening in the cell door that is used to handcuff individuals before they exit their cell.

82.     To receive emergent medical or mental health care, incarcerated individuals must yell through the grate-covered window in their cell door and attempt to get the attention of a correction officer or other DOCCS or OMH staff.

83.     The Marcy RMHU is extremely loud, making any calls for assistance difficult to hear.

84.     Some incarcerated individuals have a plastic "cell shield" always covering the grate on their cell window, making it even more difficult for them to communicate with staff, and even hotter in their cell.

85.     Even when incarcerated individuals' calls for assistance are heard, they are often ignored or not responded to in a timely manner.

    A.  For example, on August 6, 2025, there was an incident during which an incarcerated individual screamed "SUICIDE" very loudly from his cell.

    B.  It took DOCCS staff between two and five minutes to attend to the incarcerated individuals, OMH staff came approximately five to ten minutes after that.

    C.  At no point was the incarcerated individual brought out of his cell for any observation or assessment of the mental health crisis he was experiencing.

86.     The reports during the visit were consistent with a complete programming stoppage at the Marcy RMHU.

87.     Incarcerated individuals in the Marcy RMHU also reported that they do not currently have access to congregate recreation, meaning recreation with other people.

88.     To date, upon information and belief, Marcy RMHU programs remain closed, including group therapy sessions and individual sessions with therapists, counselors, ORCs, and psychiatrists. Incarcerated individuals in the Marcy RMHU are confined to their cells and recreation pens all day, every day, absent an emergency, outside visit, disciplinary hearing, or a brief medical encounter, such as for insulin injections.

89.     Encounters with therapists, psychiatrists, and DOCCS counselors are currently being completed cell-side, meaning the professional is on one side of a heavy steel cell door and the incarcerated individual is on the other side, speaking through a small, grate-covered window, which for some individuals is also covered by plexiglass.

90.     At least two incarcerated individuals have attempted suicide since February 2025 due to the inhumane conditions they are subjected to on a daily basis in the Marcy RMHU, including near constant isolation and no out-of-cell programming.

91.     At least three incarcerated individuals have engaged in hunger strikes in the last four months.

92.     Upon information and belief, during these hunger strikes, the affected incarcerated individuals were not appropriately monitored, specifically, their vital signs were not taken at the appropriate intervals.

93.     Upon information and belief, clinical staff are not regularly taking vital signs of those incarcerated individuals prescribed psychiatric medications for which vital signs need to be monitored.

94.     Incarcerated individuals in the Marcy RMHU fear that further isolation due to the current conditions of the RMHU will lead to them harming themselves and continued deterioration of their mental health.

95.     Normally, incarcerated individuals are able to earn incentives for participation in programming such as the opportunity of job assignments, additional time cut considerations, and group recreation.

96.     Because the incarcerated individuals are not currently offered programming, they do not have the same opportunities to earn incentives.

**Plaintiff-Specific Facts**

*James Dunn*

97.    Plaintiff James Dunn has been in DOCCS custody since on or about April 19, 2022.

98.    Mr. Dunn reports that, to the best of his knowledge, he has been diagnosed with bipolar disorder, PTSD, and ADHD.

99.    Mr. Dunn is classified as an OMH Level 1S patient, meaning he requires the highest level of services offered by OMH in DOCCS and is designated by OMH as seriously mentally ill, which substantially limits one or more of his major life activities, including impairment of executive functioning.

100.    Mr. Dunn is serving a sentence of twenty-five years in prison and is eligible for parole on or about November 9, 2041.

101.    Mr. Dunn has been housed in the Marcy RMHU since May 2025.

102.    On July 2, 2025, Mr. Dunn attempted suicide by hanging himself.

103.    Mr. Dunn made the suicide attempt due to the inhumane conditions at the Marcy RMHU.

104.    Mr. Dunn was taken to an outside hospital after he was discovered by the correction officers and cut down from his cell door.

105.    Mr. Dunn was then transferred to Five Points Correctional Facility where he was placed on suicide watch.

106.    Upon his return to the Marcy RMHU, Mr. Dunn was not given a "call-out" to see a mental health provider to assess his mental state after an attempted suicide.

107.    Mr. Dunn was finally taken to a mental health "call-out" on August 6, 2025, but that is the only time he has been able to speak privately with a mental health provider.

108.    Mr. Dunn is prescribed mental health medications, but when they are delivered to his cell, staff do not check to see that he is swallowing the pills.

109.    As a result, Mr. Dunn is refusing to take his medications because he is concerned that if he takes possession of the pills, he will hoard them and attempt suicide again.

110.    Mr. Dunn is still experiencing pain in his neck from his suicide attempt, and he has put in sick-call requests, but he has not been seen by a medical provider outside of his cell.

111.    Mr. Dunn continues to have thoughts of self-harm and suicidal ideations.

112.    Since being placed in the Marcy RMHU, Mr. Dunn has rarely been let out of his cell.

113.    Mr. Dunn has not had the opportunity to participate in out-of-cell programming, including therapeutic programming such as group therapy.

114.    Prior to being housed in the Marcy RMHU, Mr. Dunn participated in mental health programming at other DOCCS facilities and enjoyed them.

115.    Mr. Dunn's mental health is deteriorating due to the confinement to his cell. Mr. Dunn is afraid that further isolation due to the current conditions of the RMHU will lead to him harming himself and the continued deterioration of his mental health.

***Lacquan Berkley***

116.    Plaintiff Lacquan Berkley has been in DOCCS custody since on or about September 7, 2023.

117.    Mr. Berkley reports that, to the best of his knowledge, he has been diagnosed with bipolar disorder, depression, and attention-deficit/hyperactivity disorder (ADHD).

16

118.    Mr. Berkley is classified as an OMH Level 1S patient[6], meaning he requires the highest level of services offered by OMH in DOCCS and is designated by OMH as seriously mentally ill, which substantially limits one or more of his major life activities, including impairment of executive functioning.

119.    Mr. Berkley is serving a sentence of one to three years.

120.    Mr. Berkley has been housed in the Marcy RMHU since on or about May 19, 2025.

121.    Since being placed in the Marcy RMHU, Mr. Berkley has rarely been let out of his cell.

122.    Mr. Berkley has not had the opportunity to participate in out-of-cell programming, including therapeutic programming such as group therapy, since being placed in the Marcy RMHU.

123.    Mr. Berkley was previously in the Residential Rehabilitation Unit ("RRU") at Fishkill Correctional Facility ("Fishkill"). The conditions at the Marcy RMHU are much worse.

124.    At Fishkill, Mr. Berkley was able to participate in programming regularly, and he enjoyed the programming he attended.

125.    Mr. Berkley has attempted to get medical treatment since he has been in the Marcy RMHU by putting in "sick call" slips; however, he has not been taken to see a medical doctor or nurse.

126.    Mr. Berkley put in approximately thirty or more sick call slips  because he has a foot injury that requires physical therapy, which he previously received in the Fishkill RRU.

---

[6] OMH uses a numbered system to designate incarcerated individuals based on their mental health needs. OMH adds an "S"-designation to a Level 1 when OMH determines that the person meets the criteria of having a "Serious Mental Illness."

127.    Despite putting in numerous sick-call slips, Mr. Berkley has not received any physical therapy or medical "call-outs," and remains in significant pain on a daily basis.

128.    Mr. Berkley's mental health is deteriorating because of the conditions in the Marcy RMHU, and he feels as if he is "losing [his] mind" because he cannot leave his cell.

129.    Mr. Berkley is afraid that further isolation due to the current conditions of the RMHU will lead to him harming himself and the continued deterioration of his mental health.

130.    Mr. Berkley has had the same linens in his cell since he arrived at the Marcy RMHU. The linens have not been replaced or laundered in more than three months.

131.    Mr. Berkley has a door that opens onto a caged recreation pen so that he can get fresh air, but he has not been taken to any outside recreation since his arrival at the Marcy RMHU.

132.    When Mr. Berkley arrived at the Marcy RMHU, his recreation pen was very dirty, and he has not been given any cleaning supplies to clean it.

133.    Mr. Berkley does not have any access to congregate recreation or the law library.

***Luis Garcia***

134.    Plaintiff Luis Garcia has been in DOCCS custody since on or about December 7, 2018.

135.    Mr. Garcia reports that, to the best of his knowledge, he has been diagnosed with antisocial personality disorder.

136.    Mr. Garcia is classified as an OMH Level 1SV patient, meaning he requires the highest level of services offered by OMH in DOCCS and is designated by OMH as seriously mentally ill with known patterns of violence, which substantially limits one or more of his major life activities, including impairment of executive functioning.

137.    Mr. Garcia is serving a sentence of twenty-three to twenty-seven years.

138.    Mr. Garcia has been housed in the Marcy RMHU since on or about April 14, 2025.

139.    Since being placed in the Marcy RMHU, Mr. Garcia has rarely been let out of his cell.

140.    Mr. Garcia has not had the opportunity to participate in out-of-cell programming since being placed in the Marcy RMHU.

141.    Prior to arriving at the Marcy RMHU, Mr. Garcia was housed at Clinton Correctional Facility, where the conditions were not nearly as bad as those at the Marcy RMHU.

142.    Mr. Garcia has attempted to get medical treatment by putting in "sick call" slips; however, he has not been taken to see a medical doctor or nurse.

143.    Mr. Garcia has put in approximately ten sick call slips in the last two months, yet he has not been taken to see a doctor or nurse.

144.    Mr. Garcia reported, "[My] mental health is getting worse because of being confined to my cell.  I do not know how much longer I can survive this treatment. I have had thoughts about suicide since I have been in Marcy's RMHU."

145.    Mr. Garcia is afraid that further isolation due to the current conditions of the RMHU will lead to him harming himself and the continued deterioration of his mental health.

146.    Mr. Garcia has a door that opens onto a caged recreation pen so that he can get fresh air, but he has not been taken to any outside recreation since his arrival at the Marcy RMHU.

***Dejour Nesmith***

147.    Plaintiff Dejour Nesmith has been in DOCCS custody since on or about September 16, 2016.

148.    Mr. Nesmith reports that, to the best of his knowledge, he has been diagnosed with antisocial personality disorder.

149.    Mr. Nesmith has is classified as an OMH Level 1S patient, meaning he requires the highest level of services offered by OMH in DOCCS and is designated by OMH as seriously mentally ill, which substantially limits one or more of his major life activities, including impairment of executive functioning.

150.    Mr. Nesmith is serving a sentence of twenty-three to twenty-six years.

151.    Mr. Nesmith has been housed in the Marcy RMHU since on or about February 28, 2024.

152.    Prior to the illegal strike by correction officers, which began on or about February 17, 2025, Mr. Nesmith was able to participate in out-of-cell programming on a regular basis.

153.    Since the illegal strike, Mr. Nesmith has rarely been let out of his cell.

154.    Mr. Nesmith has not had the opportunity to participate in out-of-cell programming, including therapeutic programming such as group therapy, since on or about February 17, 2025.

155.    Mr. Nesmith is afraid that further isolation due to the current conditions of the RMHU will lead to him harming himself and the continued deterioration of his mental health.

156.    Mr. Nesmith does not have any access to congregate recreation or the law library.

157.    Mr. Nesmith engaged in a hunger strike to protest the terrible conditions he is subjected to in the Marcy RMHU from on or about May 23, 2025, until on or about July 31, 2025.

158.    Mr. Nesmith only stopped his hunger strike because he was shown a piece of paper that he was told was a "force feed order." He elected to begin eating again instead of being force-fed.

159.    Mr. Nesmith spent a brief period in the RMHU at Coxsackie Correctional Facility ("Coxsackie") after his hunger strike. While there, he saw a mental health professional daily.

160.    He did not want to return to the Marcy RMHU because the conditions at the Marcy RMHU are much worse, and because he does not get the opportunity to speak to any mental health professionals privately.

### Gilbert Carrion

161.    Plaintiff Gilbert Carrion has been in DOCCS custody since on or about July 16, 2010.

162.    Mr. Carrion reports that, to the best of his knowledge, he has been diagnosed with schizoaffective disorder, bipolar type.

163.    Mr. Carrion is classified as an OMH Level 1S patient, meaning he requires the highest level of services offered by OMH in DOCCS and is designated by OMH as seriously mentally ill, which substantially limits one or more of his major life activities, including impairment of executive functioning.

164.    Mr. Carrion is serving a sentence of one to twenty-three years.

165.    Mr. Carrion has been housed in the Marcy RMHU since on or about July 22, 2025.

166.    Since being placed in the Marcy RMHU, Mr. Carrion has rarely been let out of his cell.

167.    Mr. Carrion has not had the opportunity to participate in out-of-cell programming, including therapeutic programming such as group therapy, since being placed in the Marcy RMHU. Mr. Carrion has not been taken to outside recreation since he arrived at the Marcy RMHU. There is a door that opens onto a caged recreation pen so that he can get fresh air, but it is not the same as going outside.

168.    Mr. Carrion is afraid that further isolation due to the current conditions of the RMHU will lead to him harming himself and the continued deterioration of his mental health.

**Tyrell Escobar**

169.    Plaintiff Tyrell Escobar has been in DOCCS custody since on or about August 9, 2022.

170.    Mr. Escobar reports that, to the best of his knowledge, he has been diagnosed with post-traumatic stress disorder (PTSD), manic depression, insomnia, and borderline personality disorder, which substantially limit one or more of his major life activities, including sleeping.

171.    Mr. Escobar is classified as an OMH Level 1S patient, meaning he requires the highest level of services offered by OMH in DOCCS and is designated by OMH as seriously mentally ill, which substantially limits one or more of his major life activities, including impairment of executive functioning.

172.    Mr. Escobar is serving a sentence of six to eight years.

173.    Mr. Escobar has been housed in the Marcy RMHU since April 2025.

174.    Since being placed in the Marcy RMHU, Mr. Escobar has rarely been let out of his cell.

175.    Mr. Escobar has not had the opportunity to participate in out-of-cell programming, including therapeutic programming such as group therapy, since being placed in the Marcy RMHU.

176.    Mr. Escobar is supposed to be getting mental health treatment and getting out of his cell to attend therapy groups and treatment, but he has not been taken out of my cell in months.

177.    Mr. Escobar is afraid that further isolation due to the current conditions of the RMHU will lead to him harming himself and the continued deterioration of his mental health.

178.    Mr. Escobar previously participated in mental health programming at Great Meadow Correctional Facility, and he found it to be beneficial.

179.    Mr. Escobar reported, "On August 8, 2025, Officer Robert Deep III assaulted me. He called me a "f***ing n***er" and slammed my fingers in the window of the cell door."  The ring finger on his right hand appears to be broken and his middle finger is bruised and crooked. Mr. Escobar did not get X-rays until almost three weeks after the incident.

180.    Mr. Escobar has not been taken to outside recreation since he arrived at the Marcy RMHU.

181.    There is a door that opens onto a caged recreation pen so that he can get fresh air, but it is not the same as going outside.

**Samuel Denis**

182.    Plaintiff Samuel Denis has been in DOCCS custody since on or about April 16, 2023.

183.    Mr. Denis reports that, to the best of his knowledge, he has been diagnosed with paranoid schizophrenia and bipolar disorder.

184.    Mr. Denis is classified as an OMH Level 1S patient, meaning he requires the highest level of services offered by OMH in DOCCS and is designated by OMH as seriously mentally ill, which substantially limits one or more of his major life activities, including impairment of executive functioning.

185.    Mr. Denis is serving a sentence of two to five years.

186.    Since the illegal strike by correction officers began on or about February 17, 2025, Mr. Denis has not had the opportunity to participate in out-of-cell programming, including therapeutic programming such as group therapy.

187.    Mr. Denis is afraid that further isolation due to the current conditions of the RMHU will lead to him harming himself and the continued deterioration of his mental health.

**Jose Cornejo**

188.    Plaintiff Jose Cornejo has been in DOCCS custody since on or about March 11, 2016.

189.    Mr. Cornejo is classified as an OMH Level 1S patient, meaning he requires the highest level of services offered by OMH in DOCCS and is designated by OMH as seriously mentally ill, which substantially limits one or more of his major life activities, including impairment of executive functioning.

190.    Mr. Cornejo is serving a sentence of 14 years to 16 years.

191.    Mr. Cornejo has been housed in the Marcy RMHU since May 2024.

192.    Since the illegal strike by correction officers began on or about February 17, 2025, Mr. Cornejo has rarely been let out of his cell.

193.    Mr. Cornejo has not had the opportunity to participate in out-of-cell programming, including therapeutic programming such as group therapy, since the strike began.

194.    Mr. Cornejo is afraid that further isolation due to the current conditions of the RMHU will lead to him harming himself and the continued deterioration of his mental health.

195.    Mr. Cornejo has engaged in a hunger strike to protest the conditions in the RMHU.

196.    While on hunger strike, he was not appropriately monitored outside of his cell by medical staff, taken to the hospital, or even taken out of his cell to speak privately with a mental health professional.

197.    On July 2, 2025, Mr. Cornejo witnessed another incarcerated individual screaming loudly for mental health assistance because he was in crisis.

198.    When the individual did not receive mental health treatment, Mr. Cornejo saw the incarcerated individual hang himself.

***Devin Hoyt***

199.    Plaintiff Devin Hoyt has been in DOCCS custody since on or about October 15, 2018.

200.    Mr. Hoyt is classified as an OMH Level 1S patient, meaning he requires the highest level of services offered by OMH in DOCCS and is designated by OMH as seriously mentally ill, which substantially limits one or more of his major life activities, including impairment of executive functioning.

201.    Mr. Hoyt is serving a sentence of life in prison with the possibility of parole.

202.    Mr. Hoyt has been housed in the Marcy RMHU since on or about June 18, 2025.

203.    Since being placed in the Marcy RMHU, Mr. Hoyt has rarely been let out of his cell.

204.    Mr. Hoyt has not had the opportunity to participate in out-of-cell programming, including therapeutic programming such as group therapy.

205.    Prior to being housed in the Marcy RMHU, Mr. Hoyt was housed in the Special Housing Unit ("SHU") at Auburn Correctional Facility. The conditions at the Marcy RMHU are worse.

206.    Mr. Hoyt was also previously housed at Great Meadow Correctional Facility, where he attended programming and found it to be extremely helpful.

207.    Mr. Hoyt's mental health is deteriorating due to the confinement to his cell.

208.    Mr. Hoyt is afraid that further isolation due to the current conditions of the RMHU will lead to him harming himself and the continued deterioration of his mental health.

209.    Mr. Hoyt's visitation with his family is being interfered with.

210.    Two out of the last four times that his wife came to visit, she was not permitted in the facility and was not given a legitimate reason as to why she was denied entry.

## CLASS ALLEGATIONS

211.    Individually named Plaintiffs bring this class action pursuant to Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of themselves and as representatives of a class consisting of: all individuals who are housed and/or will be housed in the Marcy RMHU. *See* Fed. R. Civ. P. 23(a)-(b)(2).

212.    Class Members have disabilities that substantially limit one or more major life activities.

213.    Class Members are incarcerated individuals with disabilities who reside in the Marcy RMHU.

214.    RMHUs are designed to house incarcerated individuals with serious mental illness and provide "corrections-based therapeutic treatment of incarcerated individuals currently diagnosed with a serious mental illness who, due to their behavior, are serving a confinement sanction." N.Y. Comp. Codes R. & Regs. tit. 7, § 320.2 (2023).

215.    Class Members require a higher level of mental health care than incarcerated individuals in general population.

216.    Defendant DOCCS is responsible for operating RMHUs, inclusive of the Marcy RMHU, by coordinating with Defendant OMH to provide care and services to incarcerated individuals placed therein.

217.    Defendant DOCCS is responsible for operating the prison system, including providing programming and services to incarcerated individuals within the prison setting, inclusive of Marcy.

218.    Due to Defendants' failure to provide access to therapeutic programming, congregate recreation, confidential mental health care, and other essential care, Class Members are unable to access programs and services within the prison setting.

219.    The class is so numerous that joinder of all members in one action would be impracticable and inefficient.

220.    Upon information and belief, the class consists of at least 90 members.

221.    Upon information and belief, all Class Members have limited financial resources to bring this claim against Defendants individually.

222.    There are questions of law and fact common to Named Plaintiffs and members of the class. These questions include, but are not limited to:

A. Whether Defendants are violating Plaintiffs' rights under the ADA, Section 504, and the Eighth Amendment by excluding Class Members from its programs, services, and benefits by reason of their disabilities;

B. Whether Defendants are subjecting Class Members to conditions of confinement that amount to cruel and unusual punishment.

223. Named Plaintiffs' claims are typical of the claims of the members of the class:

A. Named Plaintiffs are all individuals with disabilities who reside in the Marcy RMHU.

B. Named Plaintiffs want to access programs and services within the DOCCS system which are not available to incarcerated individuals in the Marcy RMHU.

C. Class Members are individuals with disabilities who reside in the Marcy RMHU.

D. Class Members have sought or may seek access to programs and services within the DOCCS system which are not available to incarcerated individuals in the Marcy RMHU.

224. Named Plaintiffs' request for remedies of declaratory and injunctive relief will help all Class Members, as it will require DOCCS to make reasonable modifications to allow Marcy RMHU residents access to programming and services.

225. Named Plaintiffs will fairly and adequately protect the interests of all members of the class because they have the requisite personal interest in the outcome of this case, their interests are not antagonistic to those in the class, and they are represented by DRNY and PLS, law firms experienced in complex class action litigation generally, and in litigation involving the rights of people with disabilities in carceral settings specifically.

226. Named Plaintiffs' interests are not antagonistic to Class Members.

227.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to the Plaintiffs and the class as a whole.

228.     Without a class action, Defendants will likely continue their policy and practice of denying Named Plaintiffs and Class Members access to programming.

### CLAIMS FOR RELIEF

**FIRST CAUSE OF ACTION**
**TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, *et seq.***

229.     Plaintiffs repeat, reallege and incorporate by reference all paragraphs above as if fully set forth herein with same force and effect.

230.     This allegation is brought against all Defendants.

231.     Title II of the ADA states, in pertinent part: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or subjected to discrimination by any such entity."

232.     Defendants are a "public entity" for the purposes of the ADA because they are governments, agencies, or instrumentalities, or are employees/agents acting on behalf of such entities. 42 U.S.C. § 12131(1).

233.     A "qualified individual with a disability" is one who has physical and mental impairments that substantially limit one or more major life activities.  42 U.S.C. § 12102(2).

234.     Additionally, such person, "with or without reasonable modification to rules, policies or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

235.    Each Named Plaintiff is a qualified individual with a disability.

236.    Defendant New York State is a recipient of federal funds.

237.    Defendant DOCCS is a public entity as defined by 42 U.S.C § 12131(1)(A) and is a recipient of federal funds.

238.    Defendant DOCCS maintains and operates the Marcy RMHU, located at 9000 Old River Road, Marcy, New York 13403.

239.    Defendant OMH is a public entity as defined by 42 U.S.C § 12131(1)(A) and is a recipient of federal funds.

240.    Defendant OMH provides mental health services to individuals incarcerated in DOCCS, and is tasked with jointly managing with DOCCS the RMHTUs, including the RMHU.

241.    Defendants New York State, DOCCS, and OMH own and control the Marcy RMHU as a public entity and are required to adhere to the provisions of Title II of the ADA relative to the administration of public activities.

242.    Defendant Martuscello is legally responsible for the overall operations and policies of DOCCS and in each institution under its jurisdiction, including Marcy Correctional Facility.

243.    Defendant Thorpe is legally responsible for the overall operations and policies of Marcy.

244.    Defendant LoRusso is legally responsible for the overall operations and policies of the Marcy RMHU.

245.    Defendants Thorpe, LoRusso, and Sullivan, in their official capacities, oversee the Marcy RMHU, which is a public entity and is required to adhere to the provisions of Title II of the ADA relative to the administration of public activities.

246.    Defendant Hochul is responsible for ensuring that New York State operates its services, programs, and activities in conformity with Title II of the ADA, Section 504 of the Rehabilitation Act, and the Constitution of the United States.

247.    Defendant Hochul is responsible for the executive branch of New York State government, including DOCCS.

248.    Defendant Hochul is vested with the powers to appoint subordinates and employees as necessary for the exercise of [her] powers as the head of the executive department, including appointing the Commissioner of DOCCS. *See* N.Y. Exec. Law § 30.

249.    During Defendant Hochul's tenure, DOCCS has taken, and continues to take, the actions that Plaintiffs complain of in this lawsuit.

250.    Defendants failed to implement and enforce policies and practices necessary for the protection of incarcerated people with disabilities, including Named Plaintiffs, and regularly neglected to provide appropriate care.

251.    Defendants implemented policies and/or practices, ceasing all out-of-cell programming which in turn cause or have a substantial likelihood of causing undue harm to people with physical, mental, intellectual, and developmental disabilities.

252.    Defendants failed to develop, adopt, and enforce sufficient policies and procedures ensuring the adequate fulfillment of medical and mental health needs for incarcerated individuals with disabilities at the Marcy RMHU, including Named Plaintiffs and Class Members.

253.    Defendants have discriminated against Named Plaintiffs and Class Members by excluding incarcerated individuals in the Marcy RMHU from participating in programs and services.

31

254.    As a direct and proximate result of said Defendants' unlawful actions, Named

Plaintiffs and Class Members are entitled to relief therefore.

**SECOND CAUSE OF ACTION**
**SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 794**

255.    Plaintiffs repeat, reallege, and incorporate by reference all paragraphs above as if

fully set forth herein with same force and effect.

256.    This allegation is brought against all Defendants.

257.    Section 504 of the Rehabilitation Act provides, "No otherwise qualified individual

with a disability in the United States . . . shall solely by reason of her or his disability, be

excluded from participation in, be denied benefits of, or be subjected to discrimination under any

program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

258.    Section 504 further provides that a: "recipient may not, directly or through

contractual or other arrangements, utilize criteria or methods of administration: (i) That have the

effect of subjecting qualified handicapped persons to discrimination on the basis of handicap;

[or] (ii) That have the purpose or effect of defeating or substantially impairing accomplishment

of the objectives of the recipient's program or activity with respect to handicapped persons . . . ."

45 C.F.R. § 84.4(b)(4).

259.    Public entities and recipients of federal financial assistance must provide qualified

individuals with disabilities with meaningful access to their programs, services, and activities.

260.    Defendants DOCCS, OMH, and New York State are recipients of federal financial

assistance.

261.    Defendants Martuscello, Thorpe, Sullivan, LoRusso, and Hochul are responsible

for the operation of public entities receiving federal assistance.

262. Defendants are obligated under Section 504 to administer New York State programs and to utilize methods of administration in a manner that does not exclude the availability of services and programs to individuals with disabilities.

263. Each Named Plaintiff is an individual with disabilities that substantially limit one or more major life activity.

264. Each Named Plaintiff is a qualified individual with disabilities within the meaning of 29 U.S.C. § 705(20).

265. Defendants failed to utilize methods of administration in a manner that supports the availability of services and programs in the most integrated setting for incarcerated individuals with disabilities, including for Named Plaintiffs.

266. Defendants failed to provide incarcerated individuals with disabilities, including Named Plaintiffs, meaningful access to mental health and medical services and programs for their physical and/or mental health disabilities while incarcerated.

267. Defendants discriminated against incarcerated people with disabilities, including all Named Plaintiffs, by failing to support the availability of services and programs at the Marcy RMHU that allow for the adequate availability of necessary medical treatment and mental health treatment.

268. As a direct and proximate result of said Defendants' unlawful actions, Named Plaintiffs and class members are entitled to relief therefore.

### THIRD CAUSE OF ACTION
### THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION, U.S. CONST. AMEND. VIII

269. Plaintiffs repeat, reallege, and incorporate by reference all paragraphs above as if fully set forth herein with same force and effect.

270.    This allegation is brought against Defendants Hochul, Martuscello, Sullivan, Lorusso, and Thorpe ("Individual Defendants").

271.    This cause of action arises under 42 U.S.C. § 1983, through which Plaintiffs seek to redress a deprivation under color of law of a right, privilege, or immunity secured to them by the Eighth Amendment to the United States Constitution.

272.    The Eighth Amendment of the United States Constitution states "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

273.    The Individual Defendants are aware that the Named Plaintiffs are experiencing increased mental health symptoms and at risk of psychiatric decompensation because they are rarely allowed to leave their cells and are not receiving out-of-cell programming or mental health treatment.

274.    The conditions of incarceration at the Marcy RMHU, and, in particular, the Individual Defendants' deliberate indifference to medical necessities and failure to address serious and life-threatening medical and mental health needs, rises to the level of cruel and unusual punishment.

275.    Individual Defendants' knowing and deliberate deprivation of any out-of-cell programming, inclusive of therapeutic programming, and their conscious decision to confine all incarcerated individuals in the Marcy RMHU to their cells for up to twenty-four hours a day constitutes cruel and unusual punishment as it is the direct cause of the incarcerated individuals rapid mental health deterioration, and in some instances, self-harm, and suicide attempts.

276.    The Individual Defendants know of and are subjectively aware of Named Plaintiffs and Class Members' disabilities and underlying medical and mental conditions and need for treatment, and that a lack of medical and mental health treatment would cause excessive

risks to Named Plaintiffs, particularly with regard to ongoing life-threatening mental health crisis events.

277.    Individual Defendants have violated and continue to violate the Eighth Amendment rights of the Named Plaintiffs and Class Members.

278.    Individual Defendants, as New York State employees, were acting under the color of state law when they violated the Named Plaintiffs and Class Members' Eighth Amendment rights and continue to act under the color of state law.

**RELIEF REQUESTED**

WHEREFORE, the Named Plaintiffs request that this Court grant the relief as set forth below:

1. Assert subject matter jurisdiction over this matter;

2. Order that the Named Plaintiffs may maintain this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2) with respect to the proposed class identified herein;

3. Issue a declaratory judgment that the ongoing failure to provide incarcerated individuals housed in the Marcy RMHU with access to all DOCCS programs, services, and activities, including access to congregate recreation, out-of-cell programming, and mental health treatment violates the ADA, Section 504, and the Eighth Amendment;

4. Issue temporary and preliminary injunctive relief requiring Defendants to provide incarcerated individuals housed in the Marcy RMHU with access to all DOCCS programs, services, and activities, including access to congregate recreation, out-of-cell programming, and mental health treatment;

5. Issue permanent injunctive relief requiring Defendants to provide incarcerated individuals housed in the Marcy RMHU with access to all DOCCS programs, services,

and activities, including access to congregate recreation, out-of-cell programming, and

mental health treatment;

6. Award reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1920, 42 U.S.C. §

12205, 42 U.S.C. § 1988, and Federal Rules of Civil Procedure 23(e) and (h); and

7. Such other and further relief as the Court deems just and proper.

DATED:  Rensselaer, New York

September 8, 2025

Respectfully submitted,

By: _Megan Drum_

Megan Drum, Esq.
Molly Paris, Esq.
Jessica Richwalder, Esq.

DISABILITY RIGHTS NEW YORK
Attorneys for Plaintiffs
279 Troy Road, Ste 9
PMB 236
Rensselaer, NY 12144
Phone: 518-432-7861

Andrew Stecker, Esq.
Hallie Mitnick, Esq.
Marina Jerry, Esq.
Sara Jensen, Esq.

PRISONERS LEGAL SERVICES
Attorneys for Plaintiffs
41 State Street, Ste M112
Albany, NY 12207
Phone: 518-438-8046