UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMES DUNN, LACQUAN BERKLEY, LUIS
GARCIA, DEJOUR NESMITH, GILBERT
CARRION, TYRELL ESCOBAR, SAMUEL
DENIS, JOSE CORNEJO, and DEVIN HOYT;
individually and on behalf of all similarly
situated individuals,

                    Plaintiffs,

-against-

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, COMMISSIONER DANIEL
F. MARTUSCELLO III, in his official capacity,
SUPERINTENDENT BENNIE THORPE, in
his official capacity, NEW YORK STATE
OFFICE OF MENTAL HEALTH,
COMMISSIONER ANN MARIE T.
SULLIVAN, in her official capacity, RMHU
UNIT CHIEF VINCENT LORUSSO, in his
official capacity, Governor KATHY HOCHUL,
in her official capacity, and THE STATE OF
NEW YORK,

                    Defendants.

Civil Case No.  9:25-cv-1242

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR
TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

DISABILITY RIGHTS NEW YORK
Megan Drum, Esq.
Molly Paris, Esq.
Jessica Richwalder, Esq.
279 Troy Rd., Ste 9
PMB 236
Rensselaer, NY 12144
Attorneys for Plaintiffs

PRISONERS' LEGAL SERVICES
OF NEW YORK
Andrew Stecker, Esq.
Hallie Mitnick, Esq.
Marina Jerry, Esq.
Sara Jensen, Esq.
41 State Street, Ste. M112
Albany, NY 12207
Attorneys for Plaintiffs

**Table of Contents**

Statement of Facts ........................................................................................................... 2

I.    DOCCS' RMHUs ................................................................................................... 2

II.   Marcy Correctional Facility's RMHU ................................................................. 3

III.  Facts Regarding the Named Plaintiffs ................................................................. 6

      A.   James Dunn ................................................................................................... 6

      B.   Lacquan Berkley ........................................................................................... 7

      C.   Luis Garcia .................................................................................................... 7

      D.   Dejour Nesmith ............................................................................................. 8

      D.   Gilbert Carrion .............................................................................................. 8

      E.   Tyrell Escobar ............................................................................................... 9

      F.   Samuel Denis ................................................................................................. 9

      G.   Jose Cornejo .................................................................................................. 9

      H.   Devin Hoyt .................................................................................................... 10

Argument ....................................................................................................................... 10

I.    Plaintiffs and the Putative Class Face Irreparable Harm Absent an Injunction ............... 12

II.   Plaintiffs are Substantially Likely to Succeed on the Merits ............................. 14

      A.   Plaintiffs are being Subjected to Cruel and Unusual Punishment by Defendants in Violation of the Eighth Amendment to the United States Constitution ............................... 15

            i.    Plaintiffs are Incarcerated Under Conditions Posing a Substantial Risk of Serious Harm ............................................................................................................... 15

            ii.   Defendants are Deliberately Indifferent to Plaintiffs' Health and Safety ................. 17

      B.   Plaintiffs are being Discriminated Against by Defendants in Violation of the ADA and Section 504 .......................................................................................................... 19

            i.    Plaintiffs are Qualified Individuals with Disabilities ................................................ 20

            ii.   Defendants are a Public Entity Under Title II ........................................................ 21

            iii.  Defendants' Failure to Allow Access to its Programs, Services and Activities to Plaintiffs is Discrimination by Reason of their Disabilities ............................................ 21

III.  The Balance of Equities and the Public Interest Heavily Favor an Injunction ................. 23

Conclusion ..................................................................................................................... 25

# Table of Authorities

## Cases

*A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1369 (2025)..................................................................... 10

*A.H. ex rel. Hester v. French*, 985 F.3d 165 (2d Cir. 2021) ....................................................... 11

*Alexander v. Choate*, 469 U.S. 287 (1985) ................................................................................. 22

*Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240 (3d Cir. 2003) ......................................... 24

*Andino v. Fischer*, 555 F. Supp. 2d 418 (S.D.N.Y. 2008) .......................................................... 10

*Bell & Howell v. Masel Supply Co.*, 719 F.2d 42 (2d Cir.1983) ................................................. 11

*Braggs v. Dunn*, 257 F. Supp. 3d 1171 (M.D. Ala. 2017) .................................................... 12, 13

*Brooklyn Ctr. for Indep. of Disabled v. Bloomberg*, 980 F. Supp. 2d 588 (S.D.N.Y. 2013)........ 20

*Brown v. Connecticut*, 2010 WL 2220580 (D. Conn. May 27, 2010) .......................................... 19

*Clark v. Coupe*, 55 F.4th 167 (3d Cir. 2022) ............................................................................... 16

*Disability Advoc., Inc. v. N.Y.S. Off. of Mental Health,* No. 1:02-cv-04002 (S.D.N.Y. filed May
28, 2002) .............................................................................................................................. 2, 3

*Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126 (2d Cir.1997)................................................... 23

*Dubon Miranda v. Barr*, 463 F.Supp. 3d 632 (D. Md. 2020)..................................................... 24

*Farmer v. Brennan*, 511 U.S. 825 (1994) ................................................................. 14, 15, 17, 18

*Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974) ........................................................................ 15

*Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738 (2d Cir. 1953)................................... 14

*Hamm v. Farney*, 2014 WL 4370693 (N.D.N.Y. Aug. 28, 2014) ............................................... 21

*Helling v. McKinney*, 509 U.S. 25 (1993).................................................................................... 15

*Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003)........................................................... 20

*Hudson v. Palmer*, 468 U.S. 517 (1984) ..................................................................................... 14

*Idiakheuna v. Morton*, 2024 WL 417058 (E.D.N.Y. 2024)......................................................... 18

*Kermani v. N.Y. State Bd. of Elections*, 487 F. Supp. 2d 101 (N.D.N.Y. 2006)......................... 24

*L.V.M. v. Lloyd*, 318 F.Supp.3d 601 (S.D.N.Y. 2018)................................................................ 14

*LaForest v. Former Clean Air Holding Co.*, 376 F.3d 48 56 (2d Cir. 2004) .............................. 10

*Lallave v. Martinez*, 609 F.Supp.3d 164 (E.D.N.Y. 2022) ......................................................... 12

*Mint, Inc. v. Amad*, 2011 WL 1792570 (S.D.N.Y. May 9, 2011)................................................ 12

*N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483 (2d Cir. 2013)............................................ 24

*New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42 (2d Cir. 2020)....................................... 11

*Onosamba-Ohindo v. Barr*, 483 F. Supp. 3d 159 (W.D.N.Y. 2020) ........................................... 24

*Pa. Dep't of Corr. v.Yeskey*, 524 U.S. 206 (1998)....................................................................... 21

*Papadimitriou v. Mullooly, Jeffrey, Rooney & Flynn, LLP*, 2023 WL 4138517 (E.D.N.Y. June
22, 2023) ................................................................................................................................ 10

*Paykina on behalf of E.L. v. Lewin*, 387 F.Supp.3d 225 (N.D.N.Y. 2019) ........................... 16, 17

*People of New York ex rel. Spitzer v. Cty of Delaware*, 82 F. Supp. 2d 12 (N.D.N.Y. 2000)...... 11

*Peoples v. Annuci*, 180 F. Supp. 3d 294 (S.D.N.Y 2016)........................................................... 18

*Pharm. Soc'y of State of N.Y., Inc. v. N.Y. State Dep't of Soc. Servs.*, 50 F.3d 1168 (2d Cir. 1995)
................................................................................................................................................ 23

*Pugh v. Locke,* 406 F.Supp. 318 (MD Ala. 1976) ....................................................................... 15

*Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980).......................................................................... 15

*Salahuddin v. Goord*, 467 F.3d 263 (2d Cir. 2006) ...................................................................... 17
*SAM Party of N.Y. v. Kosinski*, 987 F.3d 267 (2d Cir. 2021) ...................................................... 23
*Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307 (E.D.N.Y. 2012) ......................... 22
*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)................................. 10, 11
*Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64 (2d Cir. 2016)................................................. 20

## Statutes

29 U.S.C. § 794(b) .......................................................................................................................... 27
42 U.S.C. § 10805(a)(1)(A) .............................................................................................................. 9
42 U.S.C. § 12102(2)(A)(B) ............................................................................................................ 26
42 U.S.C. § 12131 ........................................................................................................................... 26
42 U.S.C. § 12132 ............................................................................................................................. 6
42 U.S.C. 12131(1) ......................................................................................................................... 27
N.Y. Comp. Codes R. & Regs. tit. 7, § 320.2 (2023) ...................................................................... 8
N.Y. Corrections Law § 401............................................................................................................. 7
N.Y. Exec. Law ss 558(b)(ii)(C)....................................................................................................... 9

## Other Authorities

Berkley Aff. .................................................................................................................. 12, 18, 19, 24
Bruce B. Way, et al., Factors Related to Suicide in New York State Prisons, 28 Intl J L &
    Psychiatry, 207 (2005) .......................................................................................................... 19
Carrion Aff.................................................................................................................... 13, 18, 19, 24
Cornejo Aff. ............................................................................................................................. passim
Craig Haney & Mona Lynch, Regulating Prisons of the Future: A Psychological Analysis of
    Supermax and Solitary Confinement, 23 NYU Rev L & Soc Change, 477, 525 (1997) ......... 19
Craig Haney, Mental Health Issues in Long-Term Solitary and "Supermax" Confinement, 49
    CRIME & DELINQ. 124, 133 (2003) ....................................................................................... 19
Craig Haney, Restricting the Use of Solitary Confinement, 1 Ann Rev Criminology 285, 297
    (2018)..................................................................................................................................... 19
Denis Aff........................................................................................................................... 14, 18, 19
Drum Aff. ................................................................................................................................. passim
Dunn Aff. ...................................................................................................................... 11, 18, 19, 24
Escobar Aff. ..................................................................................................................... 14, 18, 19
Garcia Aff. ................................................................................................................................ passim
Hoyt Aff. ....................................................................................................................... 15, 18, 19, 24
Nesmith Aff. .................................................................................................................. 13, 18, 19, 24
Stuart Grassian, Psychiatric Effects of Solitary Confinement, 22 Wash U J L & Poly 325, 333
    (2006)..................................................................................................................................... 19

## Regulations

28 C.F.R. § 35.130(b)(1)(i)............................................................................................................. 29
28 C.F.R. § 35.130(b)(3)(i)............................................................................................................. 29

**Preliminary Statement**

Plaintiffs and the putative class are incarcerated individuals with severe mental illness who are housed or will be housed in Marcy Correctional Facility's (Marcy) Residential Mental Health Unit (RMHU). Since at least February 17, 2025, Plaintiffs and the class have been confined to their cells 24 hours a day with no access to congregate recreation, out-of-cell programming, or mental health treatment. The inexorable consequence of this practice is that class members, who are not only entitled by law to these vital services, but who require them for their physical and mental well-being, are in grave danger and risk of serious bodily injury and death.

There is no question that Defendants' denial of access to its programs, services and activities violates federal law. 42 U.S.C. § 12132. Yet Defendants have continued the same reckless practices which result in severe isolation, hunger strikes, dirty and overheated cells, and suicide attempts. *See generally* Plaintiff Affs.; Drum Aff.

Unless the Court intervenes, the scope of the harm to Plaintiffs and the class will continue to grow during the pendency of this case. An ever-expanding class of individuals will be unlawfully isolated and denied their right to basic mental health treatment by Defendants, exposing them to substantial risk of injury and death; and those already stripped of these necessary services will continue to suffer the crushing consequences of prolonged isolation and lapsed treatment.

Accordingly, Plaintiffs move for a temporary restraining order and preliminary injunction to immediately provide them daily out-of-cell time and access to Defendants' programs, services and activities, including congregate recreation, out-of-cell programming, and mental health treatment, until this Court can make a final determination on the lawfulness of Defendants' practices.

1

## Statement of Facts

### I.    DOCCS' RMHUs

In New York State, the delivery of mental health care and treatment to incarcerated individuals with mental illness is the joint responsibility of Defendant Department of Corrections and Community Supervision (DOCCS) and Defendant Office of Mental Health (OMH). The Commissioner of DOCCS, in cooperation with the Commissioner of OMH, is responsible for establishing programs for the treatment of incarcerated individuals with mental illness confined in state correctional facilities who are in need of psychiatric services but who do not require hospitalization. N.Y. Corrections Law § 401.

RMHUs were created in response to a 2002 lawsuit which alleged that DOCCS and OMH provided inadequate mental health services within the prison system, in violation of federal law. *See Disability Advoc., Inc. v. N.Y.S. Off. of Mental Health,* No. 1:02-cv-04002 (S.D.N.Y. filed May 28, 2002). Inadequate mental health services resulted in serious psychiatric deterioration of incarcerated individuals, leading to violent behavior, acts of self-mutilation and self-harm, attempts or acts of suicide, and destruction of their environment by smearing feces, setting fires, hoarding or refusing medication and food, and flooding toilets. *Id.,* Dkt. 1, ¶¶ 32-47. Incarcerated individuals were often confined for 23 hours a day, which led to cycles of commitment at Central New York Psychiatric Center (CNYPC), return to isolation in prison, continued decompensation, and recommitment to CNYPC. *Id.,* Dkt. 1, ¶ 51. For each year from 1998 through 2001, from 30% to 50% of the suicides for the entire prison population occurred within the 8% of the prison population confined in twenty-three hour isolated confinement housing. *Id.,* Dkt. 1, ¶ 59.

The resulting 2007 settlement agreement aimed to bar the long-standing practice of placing incarcerated individuals with serious mental illness into segregated confinement settings which were markedly similar to the conditions at issue in this case. *Id.,* Dkt. 94. Thus, the RMHU was created. New York codified the RMHU into law in 2008. 2008 N.Y. Sess. Laws Ch. 1.

DOCCS operates three RMHUs in coordination with OMH. The RMHU is "a program that includes a separate housing location within a correctional facility designed to address the corrections-based therapeutic treatment of incarcerated individuals currently diagnosed with serious mental illness who, due to their behavior, are serving a confinement sanction." N.Y. Comp. Codes R. & Regs. tit. 7, § 320.2 (2023). Incarcerated individuals in an RMHU must be "offered four hours of structured out-of-cell therapeutic programming and/or mental health treatment along with three hours out-of-cell congregate programming, services, treatment, recreation, activities, and/or meals, with an additional one hour of recreation, for a total of seven hours out-of-cell on a daily basis." *Id.* Adherence to these guidelines is vitally important to the health and well-being of the incarcerated individuals in the RMHUs.

## II.    Marcy Correctional Facility's RMHU

Beginning on February 17, 2025, DOCCS discontinued all regular prison programs, services and activities, including those in the Marcy RMHU. DOCCS stated they were taking this extraordinary measure and illegal action in response to a staff strike. The strike was declared over on March 10, 2025, but Marcy's RMHU has remained on "lockdown" since that time, with individuals confined to their cells nearly 24 hours per day, and regular programs and activities suspended indefinitely.

On July 30, 2025, Disability Rights New York (DRNY) notified DOCCS that it had received complaints alleging that individuals with disabilities are being subjected to abuse and/or neglect in Marcy's RMHU. Drum Aff., ¶ 5. On August 6, 2025, investigators using DRNY's Protection and Advocacy (P&A) access authority[1] conducted a visit to Marcy's RMHU. Drum Aff., ¶ 6. DRNY issued a findings letter to DOCCS on August 18, 2025, describing what was observed during this visit. Drum Aff., ¶ 7.

DRNY's investigation uncovered that Plaintiffs and putative[2] class members are receiving no out-of-cell time. Drum Aff., ¶ 27. Sixty (60) individuals reported that they had not received any programming outside their cells since being housed in Marcy's RMHU. *Id.* Plaintiffs and class members are in grave danger of physical harm due to the severity of their isolation coupled with their serious mental illness. Drum Aff., ¶¶ 18-21; *see generally* Plaintiff Affs. RMHU cells are hot and have little to no circulation, with one to two fans placed in the gallery outside the cells. Drum Aff., ¶¶ 12. Each cell door has a small opening with a grate and serves as the only means for an individual to communicate with Defendants, making it difficult to hear them speak and placing them at risk of not being heard should they call out for help. Drum Aff., ¶¶ 13. During DRNY's investigative visit, an individual screamed out "SUICIDE," but no Defendant staff responded for several minutes. Drum Aff., ¶¶ 15-18. The individual was not provided with an out-of-cell evaluation of their health and safety. Drum Aff., ¶¶ 15-18.

Sixty individuals housing in the RMHU reported that they were not receiving out-of-cell mental health counseling, or the opportunity to speak with their offender rehabilitation coordinator or an OMH counselor except brief, cell-side conversations. Drum Aff., ¶ 19. Private

---

[1] 42 U.S.C. § 10805(a)(1)(A); N.Y. Exec. Law ss 558(b)(ii)(C).
[2] Plaintiffs' motion for class certification will be filed with the Court promptly upon the case's assignment to a District Judge. For simplicity's sake, this memorandum refers in some places to the putative class as the "class".

cell-side conversations are impossible due to proximity and noise level, which individuals reported exacerbated their mental health concerns. Drum Aff., ¶ 20. Twenty individuals reported making repeated requests for mental health treatment but being denied this treatment by facility staff. Drum Aff., ¶ 22.

Every individual that investigators spoke to during the August 6, 2025, visit was visibly distraught by the isolation and lack of programming. Drum Aff., ¶ 24. At least four individuals reported suicidal ideations stemming from their isolation, with three other individuals participating in hunger strikes to protest their isolation. Drum Aff., ¶¶ 29-30. At least five individuals attempted suicide or observed another individual attempt suicide. Drum Aff., ¶ 31.

DRNY requested that Defendants remedy the above findings of abuse and neglect by August 29, 2025. Drum Aff., ¶ 34. On August 29, 2025, DOCCS' Office of Counsel sent an email to DRNY stating it acknowledged DRNY's letter, and that it would address it the following week. Drum Aff., ¶ 36. To determine if the findings of abuse and neglect had been remedied, investigators visited Marcy again on September 3, 2025. Drum Aff., ¶ 37. Investigators confirmed that the same conditions previously observed remained. Drum Aff., ¶ 38. On September 5, 2025, DRNY received a response to its letter from an official at Marcy which did not indicate an intention to resolve any of the issues investigators observed or Plaintiffs complaints of. Drum Aff., ¶¶ 39-40.

As of the date of this filing, Plaintiffs and class members are still confined to their cells without any out-of-cell time, and are denied access to Defendants' programs, services and activities, including mental health treatment. Plaintiffs are afraid that further isolation will result in them harming themselves or others.

III.    **Facts Regarding the Named Plaintiffs**

A.  **James Dunn**

Plaintiff James Dunn is an individual with a serious mental illness diagnosed with bipolar disorder, post-traumatic stress disorder, and attention-deficit/hyperactivity disorder.[3] Dunn Aff. ¶ 7. Dunn has been in DOCCS' custody since on or about April 19, 2022. Dunn Aff. ¶ 3. Dunn has been housed in the Marcy RMHU since May 2025. Dunn Aff. ¶ 6. Due to the inhumane conditions at Marcy's RMHU, Dunn attempted suicide by hanging on July 2, 2025 Dunn Aff. ¶ 8. After being transported to an outside hospital, he was briefly housed at Five Points Correctional Facility and placed under suicide watch protocol. Dunn Aff. ¶ 10. Dunn was subsequently transferred back to Marcy RMHU, and upon his return, he did not receive any mental health treatment or assessment outside of his cell. Dunn Aff. ¶ 11. He was finally brought for a mental health "call-out" on August 6, 2025. Dunn Aff. ¶ 12. Aside from that call-out, he has not received mental health care outside of his cell. Dunn Aff. ¶ 12. Dunn has begun refusing to take the medication prescribed for his mental health diagnoses because when his pills are brought to him, staff do not check and ensure that he has swallowed the pills, and he is concerned that if he takes the pills into his possession, he will hoard them and use them to attempt suicide again. Dunn Aff. ¶¶ 14-15. He sustained an injury to his neck as a result of his suicide attempt, and he is still experiencing pain in his neck as a result, and despite putting in multiple sick call slips, he has not been seen by a physician. Dunn Aff. ¶ 16. He is concerned that further isolation will lead to additional acts of self-harm and worsening of his mental health. Dunn Aff. ¶¶ 17-18.

---

[3] All Named Plaintiff self-reported their diagnoses.

**B. Lacquan Berkley**

Plaintiff Lacquan Berkley is an individual with serious mental illness diagnosed with bipolar disorder, depression, and attention-deficit/hyperactivity disorder. Berkley Aff., ¶ 7. Berkley has been in DOCCS' custody since on or about September 2023. Berkley Aff., ¶ 3. He has been housed in Marcy RMHU since May 2025 and has rarely been let out of his cell. Berkley Aff., ¶¶ 6, 8. He has had the same bedsheets in his cell since he arrived in the RMHU, and they have not been laundered. Berkley Aff., ¶ 15. Berkley has participated in no out-of-cell programming since moving to Marcy RMHU. Berkley Aff., ¶ 9. He has attempted more than 30 times to submit a "sick slip" to get medical attention for an injured foot but has received no care or response to his requests. Berkley Aff., ¶¶ 11, 12. He was previously housed at Fishkill Correctional Facility in the Residential Rehabilitation Unit[4] where he was able to attend programming regularly. Berkley Aff. ¶ 12. Berkley is concerned that further isolation due to the current inhumane conditions of the RMHU will lead to him harming himself, as well as continual deterioration of his mental health. Berkley Aff., ¶ 10.

**C. Luis Garcia**

Plaintiff Luis Garcia is an individual with serious mental illness diagnosed with antisocial personality disorder. Garcia Aff., ¶ 7. Garcia has been in DOCCS' custody since December 2018. Garcia Aff., ¶ 3. He has been housed in Marcy RMHU since April 2025 and has rarely been let out of his cell. Garcia Aff., ¶¶ 6, 8. He has participated in no out-of-cell programming since moving to Marcy RMHU. Garcia Aff., ¶ 9. He has attempted more than 10 times to submit a "sick slip" to get medical attention but has received no care or response to his requests. Garcia

---

[4] In the DOCCS system, a Residential Rehabilitation Unit (RRU) is a housing unit used for therapy, treatment, and rehabilitative programming of incarcerated people who have been separated from general population for disciplinary or other reasons. *See* N.Y. Corr. Law § 2(34). Individuals who have been found to have a "serious mental illness" must be diverted to a Residential Mental Health Treatment Unit, such as the Marcy RMHU. *Id.* § 137(6)(d)(i).

Aff., ¶10. Plaintiff Garcia is concerned that further isolation due to the current conditions of the RMHU will lead to him harming himself as well as continual deterioration of his mental health. Garcia Aff., ¶¶ 11, 12.

### D.  Dejour Nesmith

Plaintiff Dejour Nesmith is an individual with serious mental illness diagnosed with antisocial personality disorder. Nesmith Aff., ¶ 7. Nesmith has been in DOCCS' custody since September 2016. Nesmith Aff., ¶ 3. He has been housed in Marcy RMHU since February 2024. Nesmith Aff., ¶ 6. Since February 2025, he has rarely been let out of his cell and has not participated in out-of-cell programming. Nesmith Aff., ¶ 9. He engaged in a hunger strike against the terrible conditions in the RMHU and stopped only when he was told he would be force-fed. Nesmith Aff., ¶ 14. Following his hunger strike, Plaintiff Nesmith spent a brief period of time at the Coxsackie Correctional Facility RMHU, where he saw a mental health professional daily. Nesmith Aff., ¶ 15. He is concerned that further isolation due to the current conditions of the RMHU will lead to him harming himself as well as continual deterioration of his mental health. Nesmith Aff., ¶¶ 11-12.

### D. Gilbert Carrion

Plaintiff Gilbert Carrion is an individual with serious mental illness diagnosed with schizoaffective disorder and bipolar disorder. Carrion Aff., ¶ 6. Carrion has been in DOCCS' custody since 2010. Carrion Aff., ¶ 3. He has been housed in Marcy RMHU since July 2025 and has rarely been let out of his cell. Carrion Aff., ¶¶ 5, 7. He has participated in no out-of-cell programming since moving to Marcy RMHU. Carrion Aff., ¶ 7. Carrion is concerned that further isolation due to the current conditions of the RMHU will lead to him harming himself as well as continual deterioration of his mental health. Carrion Aff., ¶ 8.

### E.  Tyrell Escobar

Plaintiff Tyrell Escobar is an individual with serious mental illness diagnosed with post-traumatic stress disorder, manic depression, insomnia and borderline personality disorder. Escobar Aff., ¶ 6. Escobar has been in DOCCS' custody since August 2022. Escobar Aff., ¶ 3. He has been housed in Marcy RMHU since April 2025 and has rarely been let out of his cell. Escobar Aff., ¶¶ 5,7. He has participated in no out-of-cell programming since moving to Marcy RMHU. Escobar Aff., ¶ 7. On August 8, 2025, Escobar was assaulted by a corrections officer and has received no medical attention for what appears to be a fractured finger. Escobar Aff., ¶ 11. He is concerned that further isolation due to the current conditions of the RMHU will lead to him harming himself as well as continual deterioration of his mental health. Escobar Aff., ¶ 8.

### F.  Samuel Denis

Plaintiff Samuel Denis is an individual with serious mental illness diagnosed with paranoid schizophrenia and bipolar disorder. Denis Aff., ¶ 6. Denis has been in DOCCS custody since April 2023. Denis Aff., ¶ 3. He has been housed in Marcy RMHU for over a year and has rarely been let out of his cell. Denis Aff., ¶ 5, 7. He has participated in no out-of-cell programming since February 2025. Denis Aff., ¶ 7. Denis is concerned that further isolation due to the current conditions of the RMHU will lead to him harming himself as well as continual deterioration of his mental health. Denis Aff., ¶ 8.

### G.  Jose Cornejo

Plaintiff Jose Cornejo is an individual with serious mental illness. Cornejo Aff., ¶ 6. Cornejo has been in DOCCS custody since March. Cornejo Aff., ¶ 3. He has been housed in Marcy RMHU since May 2024 and has rarely been let out of his cell. Cornejo Aff., ¶ 7. He has participated in no out-of-cell programming since February 2025. Cornejo Aff., ¶ 7. Prior to being

incarcerated at Marcy's RMHU, he was incarcerated at Five Points Correctional Facility where he enjoyed programming. Cornejo Aff., ¶ 9. He engaged in a hunger strike to attempt to protest the conditions at Marcy's RMHU and received no medical care. Cornejo Aff., ¶ 11. On or about July 2, 2025, he heard another class member screaming for mental health assistance because he was in crisis. Cornejo Aff., ¶ 12. DOCCS staff did not call for mental health assistance, and that incarcerated individuals tried to hang himself. Cornejo Aff., ¶ 12. Cornejo is concerned that further isolation due to the current conditions of the RMHU will lead to him harming himself as well as continual deterioration of his mental health. Cornejo Aff., ¶ 8

### H. Devin Hoyt

Plaintiff Devin Hoyt is an individual with serious mental illness diagnosed. Hoyt Aff., ¶ 7. Hoyt has been in DOCCS custody since 2018. Hoyt Aff., ¶ 3. He has been housed in Marcy RMHU since June 2025 and has rarely been let out of his cell. Hoyt Aff., ¶¶ 6, 8. He has received no out-of-cell programming since being placed in the RMHU. Hoyt Aff., ¶¶ 8,9. Prior to being housed at Marcy's RMHU, he was housed in the Special Housing Unit at Auburn Correctional Facility, which he described as better than Marcy's RMHU. Hoyt Aff., ¶ 8. Plaintiff Hoyt is concerned that further isolation due to the current conditions of the RMHU will lead to him harming himself as well as continual deterioration of his mental health. Hoyt Aff., ¶ 12.

## Argument

Plaintiffs and the putative class seek a temporary restraining order[5] and preliminary injunctive relief from Defendants' suspension of congregate recreation, out-of-cell programming,

---

[5] The Second Circuit recognizes that "the standard for an entry of a TRO is the same as for a preliminary injunction." *Southeast Farms, Inc. v. Martens Fresh, LLC*, 2023 WL 1858084 (N.D.N.Y Feb. 9, 2023) (citing *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) (collecting cases)). A plaintiff seeking a temporary restraining order must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

and mental health treatment in the RMHU. Class members are entitled to that preliminary relief here. *See A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1369 (2025) (stating courts may issue temporary relief to a putative class); *LaForest v. Former Clean Air Holding Co.*, 376 F.3d 48 56 (2d Cir. 2004) (affirming issuance of preliminary injunction to then-putative class). A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Plaintiffs can make a "strong showing" that the ongoing denial of treatment, services, and out-of-cell time during this litigation will subject class members to irreparable, life-threatening-harm. *A.H. ex rel. Hester v. French*, 985 F.3d 165, 176 (2d Cir. 2021). Plaintiffs also have a "substantial" likelihood of succeeding on their claims that the Defendants' pervasive practice of confining Plaintiffs to their cells 24 hours a day with no access to congregate recreation, out-of-cell programming, or mental health treatment violates class members' rights under the Americans with Disabilities Act ("ADA") and the U.S. Constitution. *Id.* And the public interest and balance of equities weigh heavily in Plaintiffs' favor. *See New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020). Preserving constitutional rights and preventing unlawful discrimination are core societal commitments, and preliminary injunctive relief here would greatly enhance class members' safety while imposing minimal burdens on Defendants.[6]

---

[6] Plaintiffs' requested relief is consistent with the Prison Litigation Reform Act's requirements for preliminary injunctive relief in prison conditions litigation. *See* 18 U.S.C. § 3626(a)(2). The relief is narrowly drawn and extends no further than necessary because class members are requesting living conditions and therapeutic programming they are entitled to by law and which avoids the harms of potential mental health relapse, injury and death. The requested injunction affords Defendants latitude to determine how to provide Plaintiffs and the class with continued access to out-of-cell time and programming while confined in Defendants' custody.

## I.    Plaintiffs and the Putative Class Face Irreparable Harm Absent an Injunction

The showing of irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." *People of New York ex rel. Spitzer v. Cty of Delaware*, 82 F. Supp. 2d 12, 16 (N.D.N.Y. 2000) (quoting *Bell & Howell v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983)). The "court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Mint, Inc. v. Amad*, 2011 WL 1792570, at *1 (S.D.N.Y. May 9, 2011).

The harm to Plaintiffs and the class absent the requested relief is both imminent and irreparable. As Plaintiffs' affidavits attest, Defendants' practice of terminating RMHU programming has forced Plaintiffs into isolation and serious mental health decompensation, exposing them to substantially heightened risk of self-harm, and endangering their long-term stability. These consequences are the quintessence of irreparable harm. *Lallave v. Martinez*, 609 F.Supp.3d 164, 181 (E.D.N.Y. 2022) ("[C]ourts find irreparable harm only in exceptional circumstances, such as where a defendant is being held in solitary confinement."); *see also Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1214 (M.D. Ala. 2017) ("Without bringing patients out of their cells for counselling sessions, treatment team meetings, group sessions, and activities, placement in a 'mental-health unit' does no good for patients who need the highest level of care; careful observation and treatment cannot happen when confined in a small cell all day.")

Defendants' ongoing suspension of all RMHU out-of-cell recreation, out-of-cell-programming, and mental health treatment results in Plaintiffs and class members being confined to their cells for 24 hours a day. The consequences of this isolation are extremely severe. *See*

12

Hoyt Aff., ¶ 8; Nesmith Aff., ¶ 14 (describing his engagement in a hunger strike); Carrion Aff., ¶

8; Cornejo Aff., ¶¶ 11, 12 (describing his engagement in a hunger strike and listening to a class

member call for help before attempting to hang himself); Dunn Aff., ¶¶ 8-12 (describing his

recent suicide attempt); Berkley Aff., ¶¶ 10, 13; Garcia Aff., ¶ 11 (describing his suicidal

ideations); Denis Aff., ¶ 8; Escobar Aff., ¶¶ 8, 11 (describing being assaulted by a corrections

officer and receiving no subsequent medical care). The immediate and long-term consequences

of depriving human interaction to those in the RMHU constitutes irreparable harm. *See Braggs*,

257 F. Supp. 3d at 1217 ("The lack of out-of-cell treatment in mental-health units adds the risk

of harm posed by the harsh effects of isolation to that posed by inadequate treatment in

general.").

Defendants' practices of isolation set Plaintiffs and the class up for life-threatening

decompensation, another form of irreparable harm. There is a vast body of research documenting

the psychological[7] and physical[8] deterioration of individuals who experience prolonged isolation.

The isolation and its associated stresses on the mind and body place individuals with pre-existing

---

[7] Observations of incarcerated individuals in isolation have evinced evidence of a wide-range of psychiatric symptoms, including, but not limited to, heightened levels of anxiety and panic; sleeplessness and nightmares; paranoia; cognitive dysfunction; hypersensitivity to external stimuli; hallucinations; depression; lethargy; loss of emotional control; and increased suicidality and instances of self-mutilation. Craig Haney, Restricting the Use of Solitary Confinement, 1 ANN. REV. CRIMINOLOGY 285, 291 (2018). Research from various prison systems demonstrated that most incidents of self-harm occur in solitary confinement. 7 Craig Haney & Mona Lynch, Regulating Prisons of the Future: A Psychological Analysis of Supermax and Solitary Confinement, 23 NYU Rev L & Soc Change, 477, 525 (1997). A survey examining prison suicides in New York State found that approximately half of completed suicides were attributed to individuals in solitary confinement. Bruce B. Way, et al., Factors Related to Suicide in New York State Prisons, 28 Intl J L & Psychiatry, 207 (2005). These harmful effects often linger after release. Prolonged social isolation often leads to further aversion to social interaction long after release. Stuart Grassian, Psychiatric Effects of Solitary Confinement, 22 Wash U J L & Poly 325, 333 (2006); Craig Haney, Restricting the Use of Solitary Confinement, 1 Ann Rev Criminology 285, 297 (2018). A large scale study in North Carolina found that individuals who spent any time in restrictive housing were 24% more likely to die in the first year post-release, especially from suicide (78% more likely) and opioid overdose (127% more likely to die from opioid overdose in the first two weeks post-release).
https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2752350
[8] Individuals in isolation also experience many physical symptoms, such as decreased appetite, trembling hands, heart palpitations, and headaches. Craig Haney, Restricting the Use of Solitary Confinement, 1 ANN. REV. CRIMINOLOGY 285, 291 (2018); Craig Haney, Mental Health Issues in Long-Term Solitary and "Supermax" Confinement, 49 CRIME & DELINQ. 124, 133 (2003).

psychiatric conditions in a uniquely vulnerable position to experience heightened trauma. [9]

Access to mental health treatment and out-of-cell programs, services, and activities are vital to

the well-being and safety of Plaintiffs. *See* Hoyt Aff., ¶ 8; Nesmith Aff., ¶ 14; Carrion Aff., ¶ 8;

Cornejo Aff., ¶¶ 11, 12; Dunn Aff., ¶¶ 8-12; Berkley Aff., ¶¶ 10, 13; Garcia Aff., ¶ 11; Denis

Aff., ¶ 8; Escobar Aff., ¶¶ 8, 11; Drum Aff., ¶¶ 22, 25, 26, 31-33 (all individuals DRNY staff

spoke with expressed suffering from their isolation and decrepit living conditions).

Plaintiffs and the class need immediate access to Defendants' programs, services, and

activities, including congregate recreation, out-of-cell programming, and mental health

treatment. Absent preliminary injunctive relief, Plaintiffs and the class will be irreparably

harmed; there is no remedy at law that can turn back time to avoid tragedy or compensate

Plaintiffs if they suffer grave injury or death.

## II.  Plaintiffs are Substantially Likely to Succeed on the Merits

Plaintiffs seek preliminary relief on their claims under the ADA and the United States.

Constitution. To obtain a temporary restraining order, Plaintiffs need only show that there is a

fair probability that they will prevail on just one of their claims. *See Hamilton Watch Co. v.

Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953); *see e.g. L.V.M. v. Lloyd*, 318 F.Supp.3d

601, 618 (S.D.N.Y. 2018). Here, Plaintiffs can make the necessary showing as to each claim.

---

[9] Craig Haney, Mental Health Issues in Long-Term Solitary and "Supermax" Confinement, 49 CRIME & DELINQ. 124, 142 (2003) ("[P]risoners with preexisting mental illnesses are at greater risk of having this suffering deepen into something more permanent and disabling. Those at greatest risk include, certainly, persons who are emotionally unstable, who suffer from clinical depression or other mood disorders,…and those whose contact with reality is already tenuous."

**A. Plaintiffs are being Subjected to Cruel and Unusual Punishment by Defendants in Violation of the Eighth Amendment to the United States Constitution**

Plaintiffs are substantially likely to succeed on their claim that Defendants' practice of confining them at all times in their small and dirty cells violates the U.S. Constitution. The Eighth Amendment prohibits cruel and unusual punishment and "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). Its scope is not "static" and the Amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958).

A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the official must have a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834.

Plaintiffs and the class satisfy both components of this analysis: their current isolation and living conditions are objectively inhumane, and Defendants' are well-aware that the conditions in the RMHU expose Plaintiffs and the class to life-threatening harm.

**i. Plaintiffs are Incarcerated Under Conditions Posing a Substantial Risk of Serious Harm**

Plaintiffs and the class are living in 24-hour isolation in inhumane conditions, which pose a serious risk of harm to their physical, emotional and mental well-being. For a plaintiff to state their claim, they must show that they are incarcerated under conditions posing a substantial risk of serious harm, and that the acts of omissions of a defendant have resulted in the denial of minimal civilities of life's necessities. *Farmer*, 511 U.S. at 828.

15

The remedy for unsafe conditions "need not await a tragic event." *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993). An inmate is entitled to relief under the Eighth Amendment where they prove threats to their personal safety in their environment. *See Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980) (holding that violations of inmates Eighth Amendment rights occurred with regard to shelter and sanitation, food, personal safety and healthcare); *Gates v. Collier,* 501 F.2d 1291 (5th Cir. 1974) (finding that conditions which deprived inmates of basic elements of hygiene and adequate medical treatment and conditions of solitary confinement, and failure to provide adequate protection against physical assaults and abuses by other inmates, constituted cruel and unusual punishment); *Pugh v. Locke,* 406 F.Supp. 318 (MD Ala. 1976) (holding constitutional violations with respect to overcrowding, segregation and isolation, classification, mental health care, protection from violence, living conditions, food service, correspondence and visitation, educational, vocational, work and recreational opportunities, physical facilities, and staff).

Plaintiffs have serious mental illness and are living in almost complete isolation, which poses a serious risk to their safety. *See Clark v. Coupe*, 55 F.4th 167, 179-80 (3d Cir. 2022) (holding that the "extremely serious and potentially dire consequences of lengthy exposure to the conditions of solitary confinement" for an individual with severe mental illness were sufficient to allege the requisite deprivation under the 8th Amendment.). Plaintiffs are offered no meaningful human contact and are restricted to their cells at all times. Plaintiffs do not have access to mental health treatment aside from medication delivery and are forced to communicate with staff through a small, grate covered opening in their cell door. Any conversation Plaintiffs may have with staff conducting rounds on the unit is within earshot of other incarcerated individuals, thus preventing Plaintiffs from access to private mental health treatment. Plaintiffs are not permitted

to participate in any activities or programs to benefit them mentally, physically, emotionally, or socially, and their only time outdoors is in a small cage attached to their cell.

In *Paykina on behalf of E.L. v. Lewin*, this Court found that the plaintiff established the objective prong of his Eighth Amendment claim where he presented evidence that he spent a minimum of 18 hours a day in his cell, was escorted within the facility in handcuffs, and tied to a chair during programming. 387 F.Supp.3d 225, 242 (N.D.N.Y. 2019). Here, Plaintiffs are provided even less than the *Paykina* plaintiff as they are provided absolutely no time out of their cells, essentially subject to isolation for almost 24 hours a day. Plaintiffs cannot continue to live in these current conditions, and their continually deteriorating mental health may lead to self-harm.

Because Plaintiffs are all individuals with serious mental illness, the conditions of the RMHU pose as a serious threat to their safety. The isolation, coupled with lack of mental health treatment and out-of-cell time, create a substantial risk of serious harm for Plaintiffs.

### ii. Defendants are Deliberately Indifferent to Plaintiffs' Health and Safety

Deliberate indifference requires more than mere negligence, but less than acts or omissions for the purpose of causing harm or with knowledge that harm will result. *Farmer*, 511 U.S. at 835. Deliberate indifference under the Eighth Amendment "is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citing *Farmer*, 511 U.S. at 839-40). To be deliberately indifferent in the Eighth Amendment context, a prison official must be aware of and disregard a substantial risk of serious harm. *See Salahuddin*, 467 F.3d at 280 (citing *Farmer*, 511 U.S. at 835, 842). A harm need not be "surely or almost certainly [to] result" for the risk to be considered "substantial."

*Salahuddin*, 467 F.3d at 280. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

Defendants' knowing denial of any out-of-cell programming, congregate recreation, and mental health treatment to individuals Defendants have designated as having serious mental illness demonstrates deliberate indifference to Plaintiffs' health and safety. Depriving Plaintiff and class members of anything outside their cells and subjecting them to 24-hour segregation and isolation exposes them to a constellation of serious harm, some of which are the certain outcome – not merely a substantial risk – of Defendants' actions. This risk is plain to Defendants by the very nature of their positions. *See Paykina*, 387 F.Supp. at 244 (stating that DOCCS' settlement of previous claims by agreeing to reduce the use and duration of solitary confinement indicates that DOCCS decisionmakers are aware of the problems posed by solitary confinement) (citing *Peoples v. Annuci*, 180 F. Supp. 3d 294 (S.D.N.Y 2016)); *see also Idiakheuna v. Morton*, 2024 WL 417058, *15 (E.D.N.Y. 2024) ("That the risks of segregated confinement were reasonably known to the Defendants can be inferred from: their experience…; then-existing New York Correction Law; a recent settlement concerning segregated confinement in the New York prison system; and the long line of research considering the harms from segregated confinement."). The RMHU was created as a direct result of the severe and well-documented history of the harm caused by a lack of appropriate programming and services for individuals with severe mental illness, making it obvious to Defendants that serious harm will result if they undertake the same actions now. *See Farmer*, 511 U.S. at 842.

Inference aside, Defendants are plainly on notice of the harmful consequences of their actions and decisions. Their staff routinely witness the effects of this policy. While at Marcy for only a few hours, Plaintiffs' counsel witnessed people screaming that they would commit

suicide, spoke to individuals begging for access to anything outside their cell, and were overcome with the heat and the stench of the rooms around them. Drum Aff., ¶¶ 14-15, 18-21, 25, 27. At least two class members in the RMHU have attempted suicide since July 2025, and many more have expressed clear suicidal ideations. Drum Aff., ¶ 18-21, 31, 33; Cornejo Aff., ¶ 12 (describing listening to a class member call for help before attempting to hang himself); Dunn Aff., ¶¶ 8-12 (describing his recent suicide attempt).  Plaintiffs have requested access to mental health treatment, programming, and time outside their cells, and told staff that these requests are necessary to preserve their mental health. Garcia Aff., ¶ 16; Berkley Aff., ¶ 17; Dunn Aff., ¶ 13, Carrion Aff., ¶ 9; Nesmith Aff., ¶ 17; Hoyt Aff., ¶ 15.

If Plaintiffs and class members telling Defendants directly that they are being seriously harmed is not enough, DRNY shared its disturbing observations and findings with Defendants, including describing the physical environment of the RMHU, summarizing complaints they received from class members, and specifically identifying several class members who required medical attention. Drum Aff., ¶ 7.

Despite seeing it with their own eyes and being informed of it from multiple sources, Defendants are disregarding the substantial risks of serious harm to Plaintiffs and the class and taking no meaningful steps to alleviate or diminish the harm.

### B.  Plaintiffs are being Discriminated Against by Defendants in Violation of the ADA and Section 504

Plaintiffs are substantially likely to success on their disability discrimination claims under Title II of the ADA[10] because Defendants' ongoing suspension of congregate recreation, out-of-

---

[10] "Claims of disability discrimination under the ADA are held to essentially the identical standard as is applied under Section 504 of the Rehabilitation Act." *Brown v. Connecticut*, 2010 WL 2220580, at *20 (D. Conn. May 27, 2010) (citing *Henrietta D.*, 331 F.3d at 272). Plaintiffs' claims are brought pursuant to both Title II of the ADA and Section 504. In the interest of brevity Plaintiffs present their arguments using reference to the ADA with the understanding that the standard is the same under either statute.

cell programming, and mental health treatment in the RMHU denies class members meaningful access to Defendants' programs, services and activities because they are incarcerated in the RMHU. Defendants are currently choosing to isolate all class members in the RMHU because they are individuals with serious mental illness who require a higher level of care than incarcerated individuals without mental illness.

To establish a prima facie violation of Title II, Plaintiffs must show that (1) they are "qualified individual[s] with …disability[ies]; (2) defendants are subject to the ADA; and (3) Plaintiffs were "denied the opportunity to participate in … [Defendants'] services, programs, or activities or [Defendants] otherwise discriminated against [them] by reason of [their] disability[ies]. *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).

### i. Plaintiffs are Qualified Individuals with Disabilities

The protections of the ADA apply to Plaintiffs and the class because they are each qualified individuals with disabilities. The term qualified individual with a disability means "an individual with a disability, who with or without reasonable modifications to rules, policies or practices…meets the essential eligibility requirements for the…participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Plaintiffs are individuals with disabilities who are, by nature of their incarceration, eligible to participate in Defendants' programs, services and activities.

It is without question that Plaintiffs are individuals with disabilities. Each Plaintiff has a serious mental illness. *See* Named Plaintiff Affs. Under the ADA, an individual has a disability if he has a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A)(B). Serious mental illness impacts

cognitive and executive functioning, concentration, thinking, communication, all of which are major life activities. *Id.*

Plaintiffs are entitled to benefit from Marcy Correctional Facility's programs, services, and activities. Plaintiffs are all housed in Marcy Correctional Facility's RMHU, and "meet the essential eligibility requirements" to benefit from its government services. *See Brooklyn Ctr. for Indep. of Disabled v. Bloomberg*, 980 F. Supp. 2d 588, 640 (S.D.N.Y. 2013).

### ii.  Defendants are a Public Entity Under Title II

Defendants are subject to Title II because they are a "public entity." 42 U.S.C. § 12131(1). The Defendants' programing and mental health services are also subject to Title II because they constitute "services, programs, or activities of a public entity." *Id; See Pa. Dep't of Corr. v.Yeskey*, 524 U.S. 206, 210 (1998) (recognizing Title II "squarely" covers state prisons, including their medical services). Section 504 covers the programs or activities of all recipients of federal financial assistance. 29 U.S.C. § 794(b).

Defendants Martuscello, Thorpe, Sullivan, Lorusso, and Hochul are sued in their official capacity, and "ADA claims can proceed against a state official in his or her official capacity." *Hamm v. Farney*, 2014 WL 4370693, at *5 (N.D.N.Y. Aug. 28, 2014) (citing *Henrietta D. v. Bloomberg,* 331 F.3d 261, 289 (2d Cir.2003)). Defendants DOCCS, Marcy, OMH, and the State of New York are state government bodies. Collectively, Defendants are subject to Title II of the ADA and Section 504 anti-discrimination laws and regulations and are required to comply with the same.

### iii.  Defendants' Failure to Allow Access to its Programs, Services and Activities to Plaintiffs is Discrimination by Reason of their Disabilities

Defendants are discriminating against the class in violation of Title II because their practice of confining RMHU residents to their cells 24 hours a day with no access to congregate

recreation, out-of-cell programming, or mental health treatment denies class members

"meaningful access" to the Defendants' services based on mental health diagnoses. Pursuant to

Defendants' routine practice, individuals are confined to their cell when they enter the RMHU,

meaning Plaintiffs are restricted to their cells and deprived access to services because they are

individuals with severe mental illness.

A plaintiff establishes the requisite causal connection for a claim under the ADA when he

shows that *but for* his disability he would not have been denied the benefit or access at issue. *See*

*Durr v. Slater*, 558 F.Supp.3d 1, 27 (N.D.N.Y. 2021) (citing *Henrietta D.*, 331 F.3d at 272-73)

(emphasis added). In the instant matter, but for their serious mental illness which results in their

placement in the RMHU, Plaintiffs would not be facing discrimination.

Courts evaluating discrimination claims under Title II construe its protections broadly,

asking whether a covered public entity – on purpose or effect – has denied "meaningful access"

to the benefits it offers. *Alexander v. Choate*, 469 U.S. 287, 301 (1985); Henrietta D., 331 F.3d at

279 (broad construction afforded to ADA considering its remedial purpose). The requirement of

meaningful access is a pragmatic one: "[T]he relevant inquiry asks not whether the benefits

available to persons with disabilities and to others are actually equal, but whether those with

disabilities are as a practical matter able to access benefits to which they are legally entitled."

*Henrietta D.*, 331 F.3d at 273 (citing *Alexander*, 469 U.S. at 301). And courts look to the ADA's

implementing regulations in interpreting the meaningful access requirement. *See Henrietta D.*,

331 F.3d at 273–74 (relying on ADA regulations in Title II case); 28 C.F.R. § 35.130 (describing

Title II's "[g]eneral prohibitions against discrimination").

Defendants' practice is discriminatory on its face. Defendants have deliberately and

specifically chosen Plaintiffs and the class as the incarcerated individuals who will go without

access to programs, services, and activities. Defendant Martuscello, in testifying about Marcy's RMHU specifically, stated on July 14, 2025:

> To run RMHTU programming daily where each I/I is offered 4 hours per day, 5 days per week of out-of-cell treatment, they would require 16 additional staff. As they are currently running the program, they only need two additional officers and two national guard. If they were to open RMHTU 4 hours per day, 5 days per week, they would be unable to run general population 8 recreation, the package room, and either the guidance activities or IGRC/religious services/library services. It would significantly take away from the offerings of general population.

Affirmation of Daniel F. Martuscello III at 77-78, *Smalls v. Martuscello*, No. 903926-25 (Sup. Ct. Albany Cnty. July 14, 2025). Defendants' practice of denying all out-of-cell programming to Plaintiffs and the class is discriminatory on its face, as its purpose and effective is to single out people with serious mental illness and exclude them from minimally adequate access at Marcy. *See* 28 C.F.R. § 35.130(b)(1)(i) (unlawful to "[d]eny a qualified individual with a disability the opportunity to participate in or benefit from…[a] benefit[] or service" because of disability); 28 C.F.R. § 35.130(b)(3)(i) (unlawful to "utilize criteria or methods of administration…[t]hat have the effect of subjecting" individuals to disability discrimination).

But for their disabilities, Plaintiffs would not be restricted from accessing Defendants' programs, services, and activities. Defendants' refusal to provide access deprives Plaintiffs of meaningful and equal access to the benefits of correctional facility programming and constitutes unlawful discrimination under the ADA.

### III.    The Balance of Equities and the Public Interest Heavily Favor an Injunction

When a governmental defendant is the party opposing preliminary relief, "balancing of the equities merges into [the court's] consideration of the public interest." *SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 278 (2d Cir. 2021) (citation omitted). Here, the balance of equities and the public interest support granting the relief Plaintiffs seek. "[T]he public interest lies with

enforcing the Constitution and federal law." *P.G.*, 2021 WL 4059409, at *5 (citing *Paykina*, 387

F. Supp. 3d at 245).[11] Public interest is best served when society's most vulnerable individuals

are treated with dignity, and their rights as people respected.

By contrast, the public has no interest in permitting Defendants to enforce an

unconstitutional and discriminatory denial of mental health treatment and services. See *N.Y.*

*Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) ("[T]he Government does not

have an interest in the enforcement of an unconstitutional law." (*quoting Am. Civil Liberties*

*Union v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003))). Defendants will experience no hardship if

preliminarily enjoined to provide Plaintiffs with access to programs, services, and activities and

cease unnecessarily isolating them. Defendants are required by law to accommodate Plaintiffs at

their expense, and to provide medical care and livable conditions. When "faced with a conflict

between financial concerns and preventable human suffering, [the court has] little difficulty in

concluding that the balance of hardships is decidedly in plaintiff's favor." *Onosamba-Ohindo v.*

*Barr*, 483 F. Supp. 3d 159, 194 (W.D.N.Y. 2020) (citing *Dubon Miranda v. Barr*, 463 F.Supp.

3d 632, 651 (D. Md. 2020)). Defendants, who are demonstrably capable of properly

administering services in the RMHU, are hardly harmed by reinstating these services to Plaintiffs

and the class members. There is no discernable reason that Plaintiffs and others like them should

continue to experience an insurmountable risk of harm.

---

[11] For similar reasons, the Court should exercise its "wide discretion" to waive the bond requirement in Rule 65(c).
*See Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir.1997). "An exception to the bond requirement"
applies in cases, like this one, which "involv[e] the enforcement of public interests arising out of comprehensive
federal health and welfare statutes" like the ADA. *See Pharm. Soc'y of State of N.Y., Inc. v. N.Y. State Dep't of Soc.*
*Servs.*, 50 F.3d 1168, 1174 (2d Cir. 1995) (internal quotation marks and citation omitted); *see also*
*Kermani v. N.Y. State Bd. of Elections*, 487 F. Supp. 2d 101, 116 (N.D.N.Y. 2006) (waiving bond where case raised
"important constitutional and public policy issues").

**Conclusion**

For all the above reasons, this Court should issue a temporary restraining order and subsequent preliminary injunction granting Plaintiffs' request for immediate access to Defendants' programs, services and activities, including congregate recreation, out-of-cell programming, and mental health treatment.

Dated: September 8, 2025

Rensselaer, New York

By: *[signature]*

Megan Drum, Esq.
Molly Paris, Esq.
Jessica Richwalder, Esq.

DISABILITY RIGHTS NEW YORK
Attorneys for Plaintiffs
279 Troy Road, Ste 9
PMB 236
Rensselaer, NY 12144
Phone: 518-432-7861

Andrew Stecker, Esq.
Hallie Mitnick, Esq.
Marina Jerry, Esq.
Sara Jensen, Esq.

PRISONERS LEGAL SERVICES
Attorneys for Plaintiffs
41 State Street, Ste M112
Albany, NY 12207
Phone: 518-438-8046