**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**LACQUAN BERKLEY,** ***individually and on behalf of all similarly situated individuals, et al.*****,**

**Plaintiffs,**

**vs.** **9:25-CV-1242 (MAD/DJS)**

**NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION,** ***et al*****.,**

**Defendants.**

---

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **PRISONERS' LEGAL SERVICES OF NEW YORK**<br>14 Lafayette Square, Suite 510<br>Buffalo, New York 14203<br>Attorneys for Plaintiffs | **ANDREW A. STECKER, ESQ.**<br>**HALLIE ELIZABETH MITNICK, ESQ.**<br>**MARINA JERRY, ESQ.**<br>**SARA JENSEN, ESQ.** |
| **DISABILITY RIGHTS NEW YORK**<br>44 Exchange Boulevard, Suite 110<br>Rochester, New York 14614<br>Attorneys for Plaintiffs | **JESSICA LOUISE RICHWALDER, ESQ.**<br>**MEGAN DRUM, ESQ.**<br>**MOLLY J. PARIS, ESQ.** |
| **OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL**<br>The Capitol<br>Albany, New York 12224<br>Attorney for Defendants | **WILLIAM A. SCOTT, AAG** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiffs Lacquan Berkley, Luis Garcia, Dejour Nesmith, Tyrell Escobar, Samuel Denis, Jose Cornejo, and Devin Hoyt[1] commenced this action individually and on behalf of all similarly situated individuals on September 8, 2025, alleging deprivation "of all out-of-cell programming and mental health and medical treatment and keeping them almost entirely isolated in violation of the U.S. Const. amend. VIII; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, 12132; and 29 U.S.C. § 794." Dkt. No. 1. The class action complaint names eight defendants: the New York State Department of Corrections and Community Supervision ("DOCCS"); DOCCS Commissioner Daniel F. Martuscello III, in his official capacity; Marcy Correctional Facility ("Marcy") Superintendent Bennie Thorpe, in his official capacity; the New York State Office of Mental Health ("OMH"); OMH Commissioner Ann Marie T. Sullivan, in her official capacity; Marcy Residential Mental Health Unit ("RMHU") Unit Chief Vincent LoRusso, in his official capacity; Governor Kathy Hochul, in her official capacity; and the State of New York. *See id.* at ¶¶ 1, 25-39. The complaint contains two allegations against all Defendants: one under the Americans with Disabilities Act ("ADA"),[2] and one under the Rehabilitation Act ("RA").[3] *See id.* at ¶¶ 229-68. It also contains a claim of Eighth Amendment deliberative indifference under 42 U.S.C. § 1983 against Defendants Hochul, Martuscello, Sullivan, Lorusso, and Thorpe (collectively, "Individual Defendants"). *See id.* at ¶¶ 269-278. Plaintiffs seek declaratory and injunctive relief. *See id.* at 35-36.

[1] Plaintiff James Dunn was dismissed from this action on October 28, 2025, and Plaintiff Gilbert Carrion was dismissed from this action on February 18, 2026. *See* Dkt. Nos. 29, 47.

[2] 42 U.S.C. §§ 12101-213.

[3] 29 U.S.C. § 794.

On January 9, 2026, Defendants filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 41. Defendants argue they are entitled to immunity under the Eleventh Amendment with respect to some claims. *See* Dkt. No. 41-1 at 6-10. They also argue that the complaint fails to meet the plausibility standard of Rule 8 of the Federal Rules of Civil Procedure. *See id.* at 10-11. Next, Defendants argue that Plaintiffs' claims under Title II of the ADA and Section 504 of the RA should be dismissed for failure to allege facts that support the requisite causation. *See id.* at 11-13. Defendants further argue that Plaintiffs' Eighth Amendment deliberate indifference claim fails to allege facts in support of the required culpable state of mind. *See id.* at 13-15. Finally, Defendants argue that Plaintiffs' claims are moot. *See id.* at 15.[4]

On January 30, 2026, Plaintiffs filed their opposition to Defendants' motion. *See* Dkt. No. 44. Plaintiffs argue that they were not required to plead "personal involvement" of the Individual Defendants to meet the plausibility standard of Rule 8. *See id.* at 7-8. They also argue that they alleged sufficient facts to support their Eighth Amendment claim. *See id.* at 8-11. Plaintiffs contend that "Defendants offer no explanation as to why alleged staffing issues prevented them from correcting their misconduct when notified of the horrendous, life-threatening conditions through DRNY's investigation findings letter, but they were able to quickly remedy the violations

[4] Defendants move to dismiss the complaint pursuant to only Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 41 at 1. However, "courts evaluate mootness on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *Mamedov v. Barr*, No. 20-CV-1063, 2021 WL 781743, *3 (E.D.N.Y. Mar. 1, 2021) (citing *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013)). "When a case becomes moot, the federal courts 'lack[ ] subject matter jurisdiction over the action.'" *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (quoting *N.Y.C. Emps.' Ret. Sys. v. Dole Food Co.*, 969 F.2d 1430, 1433 (2d Cir. 1992)). Because courts "have an independent obligation to determine whether subject-matter jurisdiction exists," this Court will analyze Defendants' mootness arguments under Rule 12(b)(1). *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).

of law when sued and better staff the Marcy RMHU." *Id.* at 10-11. Plaintiffs argue that Defendants are not entitled to Eleventh Amendment immunity. *See id.* at 11-18. Plaintiffs further argue that they are excluded from equal access to Defendants' programs, services, and activities because of their disabilities. *See id.* at 18-20. Finally, Plaintiffs argue that their claims are not moot, and they submitted affidavits "in opposition to Defendants' assertion that the matter is moot." *Id.* at 6 n.1, 20-24; *see* Dkt. No. 44-1.

On February 6, 2026, Defendants filed a reply. *See* Dkt. No. 45. Defendants argue that the plausibility standard of Rule 8 has not been satisfied because "many of the named Defendants have no connection to or responsibility for the complained of conditions." *Id.* at 4. Prior to commencing the action, Disability Rights New York ("DRNY") sent Defendant Thrope a findings of abuse and neglect letter and received a letter in response from Acting Superintendent Danielle Medbury, which did not list any corrective actions or indicate any intention to remedy the conditions of the underlying claims. *See* Dkt. No. 1 at ¶¶ 65-70. Defendants also argue that the letter from DRNY was provided to only Defendant Thorpe, and "[i]n the absence of knowledge on the part of any other individual Defendant, Plaintiffs cannot establish the necessary culpable state of mind to support their Eighth Amendment claim." Dkt No. 45 at 4-5. Next, Defendants contend that because they quickly consented to a preliminary injunction, their "current attitudes and conduct clearly do not evince deliberate indifference." *Id.* at 5. Defendants further assert that Defendant Thorpe's failure to act, given the little time between DRNY sending the letter and commencing this action, "does not support the mental culpability required for an Eighth Amendment claim." *Id.* Defendants also argue that Plaintiffs do not allege any facts to establish that but for Plaintiffs' disabilities they would not have had their programs, services, and activities restricted, nor do they allege facts to show that their disabilities were a motivating factor in the

restrictions alleged. *See id.* at 5-6. Finally, Defendants aver that "the affidavits submitted in connection with Plaintiff's response to Defendants' argument about mootness . . . are inappropriate and should be excluded to the extent that they include irrelevant allegations that go far beyond their claimed purpose of combatting mootness." *Id.* at 6.

During the pendency of the case, the Court issued a preliminary injunction by stipulation of the parties on September 15, 2025, which it has extended four times. *See* Dkt. Nos. 21, 38, 50, 52, 54. The preliminary injunction requires as follows:

> 1. Four hours of structured out-of-cell therapeutic programming and/or mental health treatment Monday through Friday; AND
>
> 2. Three hours of out-of-cell congregate programming, services, treatment, recreation, activities, and/or meals; AND
>
> 3. One additional hour of recreation, for a total of seven hours out-of-cell on a daily basis. Since there is no structured therapeutic programming on the weekend, individuals will be afforded a full seven hours of out-of-cell congregate programming, services, treatment, recreation, activities, and/or meals.

Dkt. No 21 at 1.[5]

## II. BACKGROUND

New York State's Correction Law explains that "the superintendent of a correctional facility may keep any incarcerated individual confined in a cell or room, apart from the accommodations provided for incarcerated individuals who are participating in programs of the facility, for such period as may be necessary for maintenance of order or discipline[.]" N.Y.

---

[5] The preliminary injunction also required: "Defendants shall within five weeks from today conduct out-of-cell mental health evaluations for all consenting incarcerated individuals in Marcy Correctional Facility's RMHU in addition to regular mental health care." Dkt. No. 21 at 2. In the subsequent renewals of the preliminary injunction, it was noted that the provision "that Defendants shall conduct out-of-cell mental health evaluations has been completed and is not renewed with th[ese] Stipulation[s]." Dkt. No. 38 at 2 n.1; Dkt. No. 50 at 2 n.1; Dkt. No. 52 at 2 n.1; Dkt. No. 54 at 2 n.1.

CORRECT. LAW § 137(6). However, there are exceptions. *See id.* As relevant here, subsection (d) explains as follows:

> [T]he department, in consultation with mental health clinicians, shall divert or remove incarcerated individuals with serious mental illness, as defined in paragraph (e) of this subdivision, from segregated confinement or confinement in a residential rehabilitation unit, where such confinement could potentially be for a period in excess of thirty days, to a residential mental health treatment unit.

*Id.* § 137(6)(d)(i). A residential rehabilitation unit ("RRU") is defined as "a separate housing unit used for therapy, treatment, and rehabilitative programming of incarcerated people who have been determined to require more than fifteen days of segregated confinement pursuant to department proceedings." *Id.* § 2(34). A residential mental health treatment unit ("RMHTU") is defined as "housing for incarcerated individuals with serious mental illness that is operated jointly by the department and the office of mental health and is therapeutic in nature." *Id.* § 2(21). "Such units shall not be operated as disciplinary housing units, and decisions about treatment and conditions of confinement shall be made based upon a clinical assessment of the therapeutic needs of the incarcerated individual and maintenance of adequate safety and security on the unit." *Id.* "Incarcerated individuals placed in a [RMHTU] shall be offered at least four hours a day of structured out-of-cell therapeutic programming and/or mental health treatment, except on weekends or holidays, in addition to exercise, and may be provided with additional out-of-cell activities as are consistent with their mental health needs[.]" *Id.* RMHTUs include, *inter alia*, the RMHU model. *See id.*[6]

---

[6] RMHTUs also include "the behavioral health unit model, the intermediate care program and the intensive intermediate care program." N.Y. CORRECT. LAW § 2(21).

"A residential mental health unit (RMHU) is a program that includes a separate housing location within a correctional facility designed to address the corrections-based therapeutic treatment of incarcerated individuals currently diagnosed with a serious mental illness who, due to their behavior, are serving a confinement sanction." 7 N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") § 320.2. "All incarcerated individuals will be offered four hours of structured out-of-cell therapeutic programming and/or mental health treatment along with three hours out-of-cell congregate programming, services, treatment, recreation, activities, and/or meals, with an additional one hour of recreation, for a total of seven hours out-of-cell on a daily basis." *Id.*

Here, Plaintiffs are seven incarcerated individuals, with "serious mental illness[es] as defined in N.Y. Correction Law § 137(6)(e)," that are housed in the RMHU at Marcy.[7] Dkt. No. 1 at ¶¶ 14, 17-19, 21-24. They are all classified as OMH Level 1S or 1SV, meaning that they have serious mental illnesses that "require[] the highest level of services offered by OMH in DOCCS[.]" *Id.* at ¶¶ 118, 136, 149, 171, 184, 189, 200. OMH Level 1SV means that the individual has a known pattern of violence along with being seriously mentally ill. *See id.* at ¶ 136.

"On February 17, 2025, correction officers employed by DOCCS began an illegal strike" that "spread to most DOCCS facilities across the state, including Marcy." Dkt. No. 1 at ¶¶ 61-62. Due to the strike, "DOCCS paused most regular prison programs and services, including all Marcy RMHU programming." *Id.* at ¶ 63. "The pause in programming resulted in the incarcerated individuals in the Marcy RMHU being confined to their cells for nearly twenty-four hours a day." *Id.* at ¶ 64.

[7] At this stage, the Court accepts as true all well-pleaded factual allegations in the complaint. *See Tripathy v. McKoy*, 103 F.4th 106, 113 (2d Cir. 2024) (citation omitted).

On August 6, 2025, DRNY "conducted an investigative visit of Marcy RMHU in response to reports of suicide attempts, near constant isolation, and deprivation of out-of-cell programming." *Id.* at ¶ 65. "After the visit, DRNY sent Defendant Thorpe a findings of abuse and neglect letter[,]" which "contained four preliminary findings of abuse and neglect, and recommendations for corrective action based on those findings." *Id.* at ¶¶ 67-68. "DRNY requested that Defendant Thorpe respond to the findings letter with a plan for corrective action by August 29, 2025[,]" and "[o]n September 5, 2025, DRNY received a letter from Acting Superintendent Danielle Medbury which contained no proposed corrective actions and did not indicate any intention to remedy the conditions of the underlying claims." *Id.* at ¶¶ 69-70. "On September 8, 2025, DRNY finalized its findings and closed the investigation, with notice to Defendants and an accompanying demand for corrective action." *Id.* at ¶ 71. At the time that the complaint was filed, September 8, 2025, "Marcy RMHU programs remain[ed] closed, including group therapy sessions and individual sessions with therapists, counselors, ORCs, and psychiatrists." *Id.* at ¶ 88. Furthermore, "[i]ncarcerated individuals in the Marcy RMHU [were still] confined to their cells and recreation pens all day, every day, absent an emergency, outside visit, disciplinary hearing, or a brief medical encounter, such as for insulin injections." *Id.*

## III. DISCUSSION

### A. Motion to Dismiss Standard

As a threshold matter, "a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) . . . ." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998)); *see Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000) ("If subject

matter jurisdiction is lacking, the action must be dismissed") (citations omitted). Rule 12(b)(1) provides subject matter jurisdiction as a ground for a party's motion to dismiss. *See* FED. R. CIV. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).

If the Court is satisfied that it has subject matter jurisdiction, a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the "legal sufficiency" of the pleader's claim for relief. *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, courts may still consider documents attached to the pleading as an exhibit or incorporated by reference into the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)). A court may also consider documents that are "integral" to the pleading, even if they are not physically attached or incorporated by reference. *See id.* (quoting *Chambers*, 282 F.3d at 152-53). Courts must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim[,]" FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their]

face[,]" *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). A complaint that "pleads facts that are 'merely consistent with' a defendant's liability" generally does not meet the pleading standard. *Id.* (quoting *Twombly*, 550 U.S. at 557).

**B. Mootness**

Defendants contend that Plaintiffs' claims are moot because Defendants entered into a preliminary injunction, and the complained-of conditions cannot reasonably be expected to recur. *See* Dkt No 41-1 at 15. Plaintiffs respond that: (1) their claims are not moot because Defendants have not complied with the preliminary injunction; and (2) Defendants' "voluntary cessation" of the challenged conduct does not moot any of their claims. Dkt. No. 44 at 20-24.

"To establish standing in federal court, any party bringing a lawsuit must allege an actual case or controversy." *Deshawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) (citing *O'Shea v. Littleton*, 414 U.S. 488, 493 (1974)). A plaintiff must show three things to establish standing: "(1) he or she has suffered an injury; (2) the injury is traceable to the defendants' conduct; and (3) a federal court decision is likely to redress the injury." *Id.* (citing *Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663 (1993)). On the first prong, "[a] plaintiff seeking injunctive or declaratory relief cannot rely on past injury[,] . . . but must show a likelihood that he or she will be injured in the future." *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983)). Relatedly, "[t]o qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). "The requisite dispute must persist throughout the litigation . . . and if the dispute should dissolve at any time

due to a change in circumstances, the case becomes moot." *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 118 (2d Cir. 2001) (citations omitted). "The voluntary cessation of allegedly illegal activities will usually render a case moot if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016) (quoting *Granite State Outdoor Advert., Inc. v. Town of Orange*, 303 F.3d 450, 451 (2d Cir. 2002)).

As noted above, Defendants consented to a preliminary injunction shortly after this action was commenced. Plaintiffs point to several of their affidavits to argue that Defendants have not complied with the preliminary injunction, and, therefore, their claims are not moot. *See* Dkt. No. 44 at 6-7, 20, 24; Dkt. No. 44-1. Defendants respond that those affidavits "are inappropriate and should be excluded to the extent that they include irrelevant allegations that go far beyond their claimed purpose of combatting mootness." Dkt. No. 45 at 6 (citation omitted).

"Given that mootness is a question of subject matter jurisdiction, this Court may appropriately consider evidence outside of the pleadings, such as affidavits and other materials." *J.L. ex rel. J.P. v. N.Y.C. Dep't of Educ.*, 324 F. Supp. 3d 455, 466 n.3 (S.D.N.Y. 2018) (citations omitted). However, this Court will consider only the parts of the affidavits relevant to the issue of mootness. *See generally King's Gym Complex, Inc. v. Phila. Indem. Ins. Co.*, 314 Fed. Appx. 342, 343 (2d Cir. 2008) (summary order) (citation omitted) (explaining that extrinsic evidence may be considered, but the evidence must be relevant). Plaintiffs attest in their affidavits to Defendants' failure to comply with the preliminary injunction, such as: (1) not all Plaintiffs receiving four hours of out-of-cell therapeutic programming and/or mental health treatment; (2)

Plaintiffs not receiving any out-of-cell congregate programming, services, treatment, recreation, activities and/or meals and the one hour of additional recreation; (3) Plaintiffs not receiving any out-of-cell congregate recreation; and (4) Plaintiffs not being allowed out of their cells on weekends. *See* Dkt. No. 44-1 at 4-5, 7-8, 13-14, 16-17, 19-20, 22-23. Based on those affidavits, the Court finds Plaintiffs' claims are not presently moot. *See J.L. ex rel. J.P.*, 324 F. Supp. 3d at 466; *cf. Disability Rts. N.Y. v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 21-CV-2040, 2022 WL 10218514, *2 (2d Cir. Oct. 18, 2022) (summary order) (issue moot where "DRNY [did] not dispute that DOCCS complied with the injunction and produced all the records it requested pertaining to Individual B").

Accordingly, this aspect of Defendants' motion to dismiss is denied.[8]

**C. Eleventh Amendment**

Defendants contend that DOCCS, OMH, and New York State are entitled to sovereign immunity under the Eleventh Amendment with respect to some of Plaintiffs' claims, and—to the extent that the relief sought is not properly characterized as prospective—the Individual Defendants are also entitled to immunity. *See* Dkt. No. 41-1 at 6-10. Plaintiffs respond that Defendants DOCCS, OMH, and New York State are not immune from Plaintiffs' ADA claims under the Eleventh Amendment, and that the exception in *Ex parte Young*, 209 U.S. 123 (1908), applies to the Individual Defendants. *See* Dkt. No. 44 at 11-18.[9]

---

[8] While the Court expresses no opinion as to the likelihood of success on the mootness claim on a fully-briefed motion for summary judgment, the allegations are sufficient to survive a motion to dismiss.

[9] "Courts have consistently found that New York has waived its sovereign immunity for claims brought pursuant to the Rehabilitation Act." *Koberger v. Cletus*, No. 1:24-CV-1496, 2025 WL 2223415, *5 (N.D.N.Y. Aug. 5, 2025) (citing *Quadir v. N.Y. State Dep't of Lab.*, 39 F. Supp. 3d 528, 537 (S.D.N.Y. 2014)) (other citations omitted). As such, Defendants are not immune from Plaintiff's RA claim under the Eleventh Amendment.

The Eleventh Amendment has long been construed as barring a citizen from bringing suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State"); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890). The Eleventh "Amendment bars suits that seek either money damages . . . or injunctive relief[.]" *McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001) (citations omitted). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *See Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009).

State immunity extends not only to the states, but also to state agencies, including DOCCS and OMH. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142-47 (1993); *McGinty*, 251 F.3d at 95 ("The Eleventh Amendment extends immunity not only to a state, but also to entities considered 'arms of the state'"); *Posr v. Ct. Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999) ("An official arm of the state enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself"); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (affirming dismissal of Section 1983 claims against the Department of Correctional Services on Eleventh Amendment grounds); *Simmons v. Gowanda Corr. Facility*, No. 13-CV-0647SC, 2013 WL 3340646, *2 (W.D.N.Y. July 1, 2013) ("[T]he New York State Department of Corrections and [the named correctional facility] enjoy the same Eleventh Amendment immunity from suit in federal court as enjoyed by the state itself").

**1. *ADA Claim Against DOCCS, OMH, and New York State***

The parties' arguments regarding sovereign immunity on the ADA claim against DOCCS, OMH, and New York State raise thorny issues regarding the applicable test. *Compare United States v. Georgia*, 546 U.S. 151, 159 (2006), *with Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 111 (2d Cir. 2001); *see generally Knight v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 6:21-CV-6633, 2026 WL 2581618, *11 (W.D.N.Y. Sept. 1, 2026) (quoting *Matagrano v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 9:19-CV-763, 2023 WL 5932943, *17 (N.D.N.Y. Sept. 12, 2023)) ("In the absence of any clarification from the Second Circuit as to the extent, if any, *Garcia* survived after *Lane* and *Georgia*, district courts have adopted 'varying approaches to the continuing validity of *Garcia*"). However, because the Court grants Defendants' motion to dismiss the ADA and RA claims based on Plaintiffs' failure to state a claim, the Court need not resolve this issue at this time. *See Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482, 495 & n.7 (N.D.N.Y. 2020) (citations omitted) (stating that while sovereign immunity "is jurisdictional in the sense that it is a limitation on the federal court's judicial power . . . it is not coextensive with the limitations on judicial power in Article III"); *see also In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 155 (2d Cir. 2015) (citations omitted) ("[T]he Court has recognized that 'in cases removed from state court to federal court, as in cases originating in federal court, there is no unyielding jurisdictional hierarchy,' . . . and a court need not make a difficult determination as to subject matter jurisdiction when another clear threshold defect would warrant 'denying audience to a case on the merits'"); *Wirth v. Menifee*, No. 97-CV-8862, 1998 WL 106136, *4 (S.D.N.Y. Mar. 10, 1998) (citation omitted) ("Ordinarily a court must resolve the issue of its subject matter jurisdiction before turning to the merits of the claims. Where, however, the merits of the claims are more easily addressed than the

issue of subject matter jurisdiction, and require that the suit be dismissed, a court may proceed to the merits of the claims").

Accordingly, the Court declines to decide whether DOCCS, OMH, and New York State are entitled to sovereign immunity at this juncture. *See Dark Storm Indus. LLC*, 471 F. Supp. 3d at 495-96.

**2. *Individual Defendants***

Regarding the Individual Defendants, Defendants contend that (1) they are entitled to sovereign immunity insofar as the relief requested is not properly characterized as prospective, and because the Individual Defendants are unable to afford Plaintiffs the injunctive relief that they seek; and (2) the complaint fails to allege the Individual Defendants' personal involvement in the alleged constitutional deprivations. *See* Dkt. No. 41-1 at 8-10. Plaintiffs respond that they allege ongoing violations of federal law, which is prospective, and that the Individual Defendants have the authority to remedy the conditions being complained of. *See* Dkt. No. 44 at 16-18.

In *Ex parte Young*, the Supreme Court "established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution." *Brokamp v. James*, 573 F. Supp. 3d 696, 708 (N.D.N.Y. 2021) (citing *Ex parte Young*, 209 U.S. at 160), *aff'd*, 66 F.4th 374 (2d Cir. 2023). This doctrine provides "a limited exception to the general principle of sovereign immunity [that] allows a suit for injunctive relief challenging the constitutionality of a state official's actions in enforcing state law under the theory that such a suit is not one against the State, and therefore not barred by the Eleventh Amendment." *Ford v. Reynolds*, 316 F.3d 351, 354-55 (2d Cir. 2003) (citation omitted). Under this doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff,

"(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (citations and internal quotation marks omitted); *see also Santiago v. N.Y. State Dep't of Corr. Servs.*, 945 F.2d 25, 32 (2d Cir. 1991) (citation omitted) (holding that claims brought pursuant to the *Ex parte Young* exception cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities). However, this "exception to sovereign immunity only authorizes suit against officials with the authority to provide the requested relief." *Siani v. State Univ. of N.Y. at Farmingdale*, 7 F. Supp. 3d 304, 317 (E.D.N.Y. 2014) (citations omitted); *see Salvana v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 5:21-CV-735, 2022 WL 17083088, *4 (N.D.N.Y. Nov. 18, 2022); *Melendez v. Schneiderman*, No. 9:13-CV-622, 2014 WL 2154536, *8 n.13 (N.D.N.Y. May 22, 2014) (noting that the supervisory official who has the authority to bring about the specific injunctive relief plaintiff seeks, is an appropriate defendant).

The Court agrees with Plaintiffs that they are seeking prospective relief, and not retrospective relief as Defendants claim. As Plaintiffs explain, they "are seeking forward-looking injunctive relief in the form of policy change – namely, that they be permitted to leave their cells for programming and congregate recreation." Dkt. No. 44 at 17 (citing Dkt. No. 1 at 35-36, ¶¶ 4-5) (other citation omitted). Plaintiffs are "also seek[ing] prospective declaratory relief – namely that the Individual Defendants' failures violate the law, wherein the Court would resolve any uncertainty about the Individual Defendants' obligations to Plaintiffs moving forward." *Id.* (citing Dkt. No. 1 at 35, ¶ 3).

Regarding whether the Individual Defendants can provide Plaintiffs with the requested injunctive relief, Plaintiffs have plausibly alleged that Defendants Thorpe and LoRusso were personally involved in the alleged deprivations and have the authority to provide the requested

injunctive relief. *See* Dkt. No. 1 at ¶¶ 238, 240-253, 273-78. Specifically, the complaint alleges that "Defendant Thorpe is legally responsible for the overall operations and policies of Marcy" and "Defendant LoRusso is legally responsible for the overall operations and policies of the Marcy RMHU." *Id.* at ¶¶ 243-44. The Court finds that based on those allegations, it would be premature to dismiss Plaintiffs' ADA and Eighth Amendment claims for injunctive and declaratory relief before discovery, which may clarify the Defendants Thorpe and LoRusso's authority. *See Talukder v. New York*, No. 22-CV-1452, 2023 WL 2752863, *6 (S.D.N.Y. Mar. 31, 2023) ("Given that the Complaint indicates that the State Officials both have control over DOCCS's policy and/or requests for accommodations, the Court agrees with [the plaintiff] that it would be premature to dismiss his Section 1983 claims for declaratory and injunctive relief prior to fact discovery"); *Sughrim v. New York*, 503 F. Supp. 3d 68, 92 (S.D.N.Y. 2020) ("The Court is persuaded by Plaintiffs' argument that it would be premature to dismiss their § 1983 claims for injunctive and declaratory relief before fact discovery clarifies which DOCCS Officials possess the authority to provide the requested relief").

However, as to Defendants Hochul, Sullivan, and Martuscello, there are no plausible allegations that they knew of the alleged deprivations or have any control over Plaintiffs access to programming and/or congregate recreation.

It is well settled that "the personal involvement requirement does not apply to bar actions . . . for injunctive relief against a state official." *Miller v. Annucci*, No. 9:19-CV-30, 2019 WL 11276705, *8 (N.D.N.Y. Dec. 16, 2019) (citations and internal quotation marks omitted). Defendants take issue with many of the Individual Defendants "hav[ing] no connection to or responsibility for the complained of conditions." Dkt. No. 45 at 4; *see Miller*, 2019 WL 11276705, at *8 (citations omitted) ("[I]n order to state a claim seeking injunctive relief, a

plaintiff must demonstrate that the defendant 'has a direct connection to, or responsibility for, the alleged illegal action'").

"To establish liability against an official under Section 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command." *Harris v. Keane*, No. 26-CV-142, 2026 WL 2031421, *2 (W.D.N.Y. July 14, 2026); *see also Gardner v. Hochul*, No. 21-CV-10185, 2021 WL 6064222, *2 (S.D.N.Y. Dec. 21, 2021) ("[The p]laintiff also does not allege any facts showing that Hochul was personally involved in the events underlying his claims, and he therefore fails to state a claim against her in her personal capacity"). Plaintiffs have not presented allegations which support holding Defendant Hochul liable for the alleged constitutional deprivations solely based on her government position.

Likewise, there are no "allegations [which] reflect that Martuscello [or Sullivan] knew of the risk posed by the" conditions, that they were "involved in the decision to" keep Plaintiffs in their cells, or that they "knew" Plaintiffs were not being taken to programming or receiving congregate recreation. *Damas v. Bartlett*, No. 9:25-CV-775, 2026 WL 2333951, *9-10 (N.D.N.Y. Aug. 12, 2026). Plaintiffs allege that "Defendant OMH provides mental health services to individuals incarcerated in DOCCS, and is tasked with jointly managing with DOCCS the RMHTUs, including the RMHU" and "[d]uring Defendant Hochul's tenure, DOCCS has taken, and continues to take, the actions that Plaintiff's complain of in this lawsuit." Dkt. No. 1 at ¶¶ 240, 249. However, there are no allegations that Defendants Sullivan, Martuscello, or Hochul were ever informed of the alleged constitutional violations and ignored them as required to state an Eighth Amendment claim.

Plaintiffs are correct that "[w]hen seeking prospective injunctive relief, a plaintiff need not prove personal involvement of the defendant." *Carter v. Schroeder*, No. 26-CV-166, 2026 WL 2042762, *5 (W.D.N.Y. July 15, 2026). "Instead, 'claims for prospective declaratory or injunctive relief are permissible provided the official against whom the action is brought has a direct connection to, or responsibility for, the alleged illegal action." *Id.* (quoting *Marshall v. Switzer*, 900 F. Supp. 604, 615 (N.D.N.Y. 1995); *see* Dkt. No. 44 at 8.

However, there are no allegations that Defendants Hochul, Sullivan, or Martuscello "have sufficient connection with the enforcement of the [c]hallenged [actions]" or the decisions as to whether Plaintiffs participate in programming or engage in congregate recreation; therefore, "they cannot be a party to this suit." *Goldstein v. Hochul*, 680 F. Supp. 3d 370, 385 (S.D.N.Y. 2023); *see also Jeannot v. New York State*, 762 F. Supp. 3d 217, 234 (E.D.N.Y. 2025), *appeal withdrawn sub nom. Jeannot v. McDonald*, No. 25-314, 2025 WL 2320485 (2d Cir. July 14, 2025) (concluding "that Governor Hochul lacks the requisite connection to the enforcement of the CDPAP Law contemplated by *Ex parte Young* and that the Agency Plaintiffs' claims against her under the Medicaid Act and for a due process violation must be dismissed without prejudice") (collecting cases).

Therefore, the Court denies Defendants' motion to dismiss the claims against Defendants Thorpe and LoRusso, but grants the motion to dismiss the claims against Defendants Hochul, Sullivan, or Martuscello.[10]

---

[10] Defendants contend that the complaint fails to meet the plausibility standard of Rule 8 of the Federal Rules of Civil Procedure because it fails to plausibly allege personal involvement of the Individual Defendants. *See* Dkt No. 41-1 at 10-11; Dkt. No. 45 at 4. Plaintiffs respond that they were not required to plead the personal involvement of the Individual Defendants to meet the plausibility standard under Rule 8. *See* Dkt. No. 44 at 7-8. Rule 8 does not set forth any personal involvement pleading requirement; however, it is well settled that personal involvement of every Defendant is a prerequisite to relief.

**D. ADA and RA Discrimination Claims**

Defendants contend that Plaintiffs' claims under Title II of the ADA and Section 504 of the RA should be dismissed because of Plaintiffs' failure to allege facts that support the requisite causation. *See* Dkt. No. 41-1 at 11-13; Dkt. No. 45 at 5-6. Plaintiffs respond by stating that they are excluded from equal access to Defendants' programs, services, and activities because of their disabilities. *See* Dkt. No. 44 at 18-20.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Likewise, § 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). "Disability discrimination claims under these two statutes are sufficiently similar that courts lump them together for purposes of the analysis." *Raymond v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 749 F. Supp. 3d 290, 302 (N.D.N.Y. 2024) (citing *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016)). To plead a *prima facie* violation, Plaintiffs must allege: "(1) [they are] qualified individual[s] with . . . disabilit[ies]; (2) the defendant is an entity subject to the acts; [and] (3) [they were] denied the opportunity to participate in or benefit from the entity's services, programs, or activities, or w[ere] otherwise discriminated against by reason of [their] disabilit[ies]." *Id.* (citing *Wright*, 831 F.3d at 72).

Because Defendants take issue with only the causation requirement, *i.e.*, that Plaintiffs were discriminated against *because of* their disabilities, the Court will assume for purposes of this

analysis that the first two requirements have been met. *See, e.g.*, Dkt No. 41-1 at 12 (citing *Palma v. Workers Comp. Bd. of N.Y.*, 151 Fed. Appx. 20, 22 (2d Cir. 2005) (summary order)) ("Here, assuming that they can establish the other necessary elements, Plaintiffs fail to allege facts that support causation for their ADA and Rehabilitation Act claims").

In their complaint, Plaintiffs tie the alleged deprivations to the correction officers' strike. *See* Dkt. No. 1 at ¶¶ 61-63, 152-53, 186, 192-93. The problem for Plaintiffs is, as Defendants point out, that "the Complaint suggests that the staffing shortages that resulted from the strike similarly impacted all incarcerated individuals at Marcy." Dkt No. 41-1 at 13. Plaintiffs argue, in a conclusory fashion, that "Defendants' refusal to let Plaintiffs out of their cells deprives Plaintiffs of meaningful access to the benefits of correctional facility programming and constitutes unlawful discrimination under the ADA because of Plaintiffs' disabilities." Dkt No. 44 at 20. However, as Defendants correctly articulate, "Plaintiffs do not allege any facts to establish that but for their disabilities they would not have had their programs, services, and activities restricted nor do they allege facts to show that their disabilities were a motivating factor in the restrictions alleged." Dkt. No. 45 at 5-6 (citation omitted). Put another way, Plaintiffs are claiming that their disabilities were not adequately treated, not that that they were treated inadequately *because of* their disabilities. *See Cooper v. New York*, No. 9:19-CV-362, 2020 WL 1140500, *3 (N.D.N.Y. Mar. 9, 2020) (emphasis in original) ("[T]he allegations set forth by plaintiff establish that '[the plaintiff's] asthma was not adequately treated, not that he was treated inadequately *because* of his asthma'").

Plaintiffs argue that "[a]ll therapeutic programming has ceased, incarcerated individuals are being isolated in their cells for twenty-four hours a day, save for an occasional 'call-out,' and incarcerated individuals are not receiving individual therapy." Dkt No. 44 at 19-20 (quoting Dkt.

No. 1 at ¶ 6). They then argue, "[t]he same cannot be said other units for general population, or even those who were housed in Defendants' other RMHU facilities." *Id.* at 20 (citing Dkt. No. 1 at ¶¶ 123-24, 126, 141, 159-60, 178, 205-06). However, a review of those paragraphs reveals that Plaintiffs allege only that they received better treatment at other DOCCS facilities, not that Plaintiffs are receiving worse treatment than the incarcerated individuals in the general population at Marcy. Plaintiffs do not sufficiently allege that they were discriminated against, when compared to the incarcerated individuals in the general population, because of their disabilities.[11] As a result, Plaintiffs fail to state a claim under the ADA and RA. *See Santana v. Westchester Cnty. Dep't of Corr.*, No. 25-CV-06628, 2026 WL 1480881, *5 (S.D.N.Y. May 27, 2026) (emphasis omitted) (citation omitted) ("Plaintiff's claims nonetheless fail as he in no way alleges that he was discriminated against on the basis of his disability, as required by both statutes"); *Hedrick v. Alfred*, No. 9:25-CV-0980, 2026 WL 407508, *18 (N.D.N.Y. Feb. 13, 2026) (emphasis omitted) (citations omitted) ("Here, the amended complaint fails to identify any DOCCS service, program, or activity that plaintiff was unable to participate in because of his medical condition, or a failure to accommodate it, let alone that any such deprivation was based on an official's discriminatory animus or ill will").

Accordingly, Defendants' motion to dismiss Plaintiffs' ADA and RA claims for failing to state a claim is granted.

**D. Eighth Amendment Claim**

Defendants contend that Plaintiffs' Eighth Amendment deliberate indifference claim fails to allege facts in support of the required culpable state of mind. *See* Dkt. No. 41-1 at 13-15; Dkt.

---

[11] Even in the affidavits that Plaintiffs attached to their response, Plaintiffs provide no comparison between their treatment and those housed in the general population.

No. 45 at 4-5. Plaintiffs argue that they allege sufficient facts to support the culpable state of mind of their Eighth Amendment claim. *See* Dkt. No. 44 at 8-11.

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain" and is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Id.* at 102-03 (citations omitted); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citations omitted). While the Eighth Amendment does not mandate comfortable prisons, "neither does it permit inhumane" treatment of those in confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his or her] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Id.* (citation and internal quotation marks omitted). Addressing the objective element, to prevail a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (citation and internal quotation marks omitted). To determine whether inadequate care is "sufficiently serious," a court must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citation omitted).

"Second, the defendant must act with a sufficiently culpable state of mind[,]" *Chance*, 143 F.3d at 702 (citation and internal quotation marks omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety[.]" *Farmer*, 511 U.S. at 837; *see also Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (citation omitted) (with respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness'"). Where a plaintiff "seeks injunctive relief to prevent a substantial risk of serious injury from ripening into actual harm, 'the subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct[.]'" *Farmer*, 511 U.S. at 845 (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)).

Non-medical personnel may be held liable for deliberate indifference to medical needs where a plaintiff demonstrates that the prison personnel intentionally denied or delayed access to medical care or intentionally interfered with medical treatment once it was prescribed. *See Baumann v. Walsh*, 36 F. Supp. 2d 508, 512 (N.D.N.Y. 1999) (citations omitted) ("Non-medical prison personnel engage in deliberate indifference where they 'intentionally delayed access to medical care when the inmate was in extreme pain and has made his [or her] medical problem known to the attendant prison personnel'"); *see also Estelle*, 429 U.S. at 104-05 (citations omitted) (noting that deliberate indifference may exist when prison guards intentionally deny or delay access to medical care).

Here, Defendants do not dispute the objective prong of Plaintiffs' deliberate indifference claim; they dispute only the second requirement, arguing that "the Complaint fails to show that Defendants acted with a sufficiently culpable state of mind." Dkt. No. 41-1 at 14. Defendants argue "[t]hat prison officials were notified of the alleged deprivations following an investigation

by DRNY prior to commencement of this action . . . does not undermine the state of emergency that existed in DOCCS facilities because of the strike." Dkt. No. 41-1 at 14 (internal citation omitted). Defendants continue, "[o]nly Superintendent Thorpe was provided with DRNY's findings of abuse and neglect letter before the action was commenced." Dkt No. 45 at 4-5 (citing Dkt. No. 1 at ¶¶ 67, 71). Defendants go on to argue that "[t]he Complaint does not allege that DRNY sent the letter to any other defendant nor does it allege that Superintendent Thorpe shared DRNY's letter with any other defendant." *Id.* at 5.

The complaint alleges that after DRNY sent its letter to Defendant Thorpe, Acting Superintendent Medbury sent a response back to DRNY. *See* Dkt No. 1 at ¶¶ 67-70. As a result, Plaintiffs have pled that Defendant Thorpe told at least one other person about the letter. "On September 8, 2025, DRNY finalized its findings and closed the investigation, with notice to Defendants and an accompanying demand for corrective action." *Id.* at ¶ 71.

Likewise, Plaintiffs allege that: (1) "[t]he Individual Defendants are aware that the Named Plaintiffs are experiencing increased mental health symptoms and at risk of psychiatric decompensation because they are rarely allowed to leave their cells and are not receiving out-of-cell programming or mental health treatment[,]" Dkt. No 1 at ¶ 273; (2) "Defendants implemented or failed to implement policies that resulted in Plaintiffs' 24-hour isolation in their cells, failed to provide required mental health and medical services, and failed to provide equal access to Defendants' program and services," Dkt. No. 44 at 9 (citing Dkt. No 1 at ¶¶ 249-253, 265-67, 273-76); (3) "Individual Defendants' knowing and deliberate deprivation of any out-of-cell programming, inclusive of therapeutic programming, and their conscious decision to confine all incarcerated individuals in the Marcy RMHU to their cells for up to twenty-four hours a day constitutes cruel and unusual punishment as it is the direct cause of the incarcerated individuals

rapid mental health deterioration, and in some instances, self-harm, and suicide attempts[,]" Dkt. No. 1 at ¶ 275; and (4) "Defendants' actions and inactions lead to liability under the claims of this litigation," Dkt. No. 44 at 9-10 (citing Dkt. No. 1 at ¶¶ 11, 249-253, 265-67, 273-76). Even assuming arguendo that only Defendant Thorpe received DRNY's letter, Plaintiffs have sufficiently alleged that Individual Defendants knew Plaintiffs were not being provided with their required programming and treatment. At this stage that is sufficient to allege the subjective prong of a deliberate indifference claim. *See Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 453 (D. Conn. 2020) (citation omitted); *K.A. v. City of New York*, 413 F. Supp. 3d 282, 297-98 (S.D.N.Y. 2019).[12]

Therefore, Defendants' motion to dismiss the Eighth Amendment claim is denied.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 41) is **GRANTED in part and DENIED in part as set forth herein**; and the Court further

**ORDERS** that Plaintiffs' Eighth Amendment claim against the Defendants Thorpe and LoRusso **SURVIVES**; and the Court further

**ORDERS** that the Clerk of the Court shall terminate Defendants Hochul, Sullivan, Martuscello, the New York State Department of Corrections and Community Supervision, the New York State Office of Mental Health, and the State of New York; and the Court further

[12] Defendants also argue that the preliminary injunction they entered into "demonstrates that they are not knowingly and unreasonably disregarding an objectively intolerable risk of harm at the present time." Dkt. No. 41-1 at 14-15 (citing Dkt. Nos. 21, 38). However, as stated above, Defendants dispute that Plaintiffs are complying with the injunction. *See* Dkt. No. 44-1 at 4-5, 7-8, 13-14, 16-17, 19-20, 22-23.

**ORDERS** that the Clerk of the Court is respectfully directed to reset deadlines on Plaintiffs' Motion to Certify Class (Dkt. No. 7); and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 30, 2026
Albany, New York

Mae A. D'Agostino
U.S. District Judge